**CASE NO. 10-4115/10-4116**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR**
**THE SIXTH CIRCUIT**

**CHASE BANK, USA, et al.**
*Plaintiffs-Appellants*

**v.**

**CITY OF CLEVELAND**
*Defendant –Appellee*

Appeal from the United States District Court for the
Northern District of Ohio, Eastern Division
No. 08-00514

**BRIEF OF APPELLANTS**

Isaac Schulz (0021009)
Michael N. Ungar (0016989)
Richik Sarkar (0069993)
Isaac J. Eddington (0072966)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
216-583-7000 / Fax: 216-583-7001
ischulz@ulmer.com
mungar@ulmer.com
rsarkar@ulmer.com
ieddington@ulmer.com
*Counsel for Appellants Chase Bank USA,*
*N.A, JPMorgan Chase Bank, N.A.,*
*JPMorgan Mortgage Acquisition Corp., and*
*J.P. Morgan Securities Inc.*

## <u>DISCLOSURE OF CORPORATE AFFILIATIONS<br>AND FINANCIAL INTEREST</u>

Pursuant to 6th Cir. R. 26.1, Appellants Chase Bank USA, N.A., JPMorgan Chase Bank, N.A., JPMorgan Mortgage Acquisition Corp., and J.P. Morgan Securities, Inc. make the following disclosures:

1.    Are said parties a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the party:

   Yes.  JPMorgan Chase & Co. is a publicly owned corporation. Appellant Chase Bank USA, N.A. is a subsidiary of CMC Holding Delaware Inc., which is a wholly owned subsidiary of J.P. Morgan Equity Holdings, Inc., which is a wholly owned subsidiary of JPMorgan Chase & Co.

   Appellant JPMorgan Chase Bank, N.A. is a wholly owned subsidiary of JPMorgan Chase & Co.

   Appellant JPMorgan Mortgage Acquisition Corp. is organized as an operating subsidiary of JPMorgan Chase Bank, N.A., which is a wholly owned subsidiary of JPMorgan Chase & Co.

   Appellant J.P. Morgan Securities, Inc., a wholly owned subsidiary of JPMorgan Chase & Co., merged with and into Bear Stearns & Co., Inc.  Following such merger, Bear Stearns & Co., Inc. changed its name to J.P. Morgan Securities, Inc.  J.P. Morgan Securities, Inc. is a wholly owned subsidiary of JPMorgan Chase & Co.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

Yes.  JPMorgan Chase & Co.

/s/    Isaac Schulz
Isaac Schulz (0021009)
Michael N. Ungar (0016989)
Richik Sarkar (0069993)
Isaac J. Eddington (0072966)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
216-583-7000 / Fax: 216-583-7001
ischulz@ulmer.com
mungar@ulmer.com
rsarkar@ulmer.com
ieddington@ulmer.com
*Counsel for Appellants Chase Bank USA, N.A, JPMorgan Chase Bank, N.A., JPMorgan Mortgage Acquisition Corp., and J.P. Morgan Securities Inc.*

# **TABLE OF CONTENTS**

STATEMENT OF WHY ORAL ARGUMENT SHOULD BE HEARD ................1

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF ISSUES ...................................................................................2

STATEMENT OF THE CASE...............................................................................3

STATEMENT OF FACTS .....................................................................................5

SUMMARY OF ARGUMENT ..............................................................................8

ARGUMENT ......................................................................................................10

I.      THIS COURT'S REVIEW OF THE DISTRICT COURT'S
        DECISION IS *DE NOVO*..............................................................................10

II.     THE FEDERAL COURTS HAVE JURISDICTION, UNDER 28
        U.S.C. §1331, OVER SUITS FOR DECLARATORY AND
        INJUNCTIVE RELIEF AGAINST FEDERALLY PREEMPTED
        STATE ACTIONS.......................................................................................10

III.    THE CHASE GROUP HAS A VALID CAUSE OF ACTION
        UNDER BOTH THE SUPREMACY CLAUSE AND 42 U.S.C.
        §1983. ....................................................................................................17

        A.      The Supremacy Clause Creates An Implied Right of Action For
                Preemption Actions Against State Officials. .....................................17

        B.      The Chase Group Also States A Cause of Action Under 42
                U.S.C. §1983, Which This Court Has Jurisdiction To Hear
                Under Both 28 U.S.C. §1331 And 28 U.S.C. §1343(a)(3). ...............19

IV.     THE DISTRICT COURT ERRED IN DISMISSING THE CHASE
        GROUP'S COMPLAINT FOR FAILURE TO SHOW
        IRREPARABLE HARM. ...............................................................................26

i

A.    The District Court Unfairly Dismissed the Chase Group's Complaint On The Issue of Irreparable Harm Without Opportunity For Briefing. ....................................................26

B.    In The Alternative, The Chase Group's Amended Complaint States A Cause Of Action For Irreparable Harm. ...............................28

CONCLUSION ....................................................................................33

CERTIFICATE OF COMPLIANCE........................................................35

CERTIFICATE OF SERVICE ...............................................................36

ADDENDUM ......................................................................................37

DESIGNATION OF DISTRICT COURT DOCUMENTS............................ 37

UNPUBLISHED CITED AUTHORITY....................................... 38

# TABLE OF AUTHORITIES

## Cases

*ABC Charters, Inc. v. Bronson,*
   591 F. Supp. 2d 1272, (S. D. Fla. 2008) ..............................................................32

*Adrian Energy Associates v. Michigan Public Service Commission,*
   481 F.3d 414 (6th Cir. 2007).................................................................... 2, 13, 14

*Ammex, Inc. v. Cox,*
   351 F.3d 697 (6th Cir. 2003).............................................................. 2, 13, 14, 15

*Association of Banks in Insurance v. Duryee,*
   C2-98-1120, Feb. 9, 2000 (unpublished Order) (S.D. Ohio).............................23

*Association of Banks in Insurance, Inc. v. Duryee*,
   270 F.3d 397 (6th Cir. 2001)........................................................... 22, 23, 24, 26

*Bank of America v. City and County of San Francisco,*
   309 F.3d 551 (9th Cir. 2002)..............................................................................24

*Bank One, Utah, N.A. v. Guttau,*
   190 F.3d 844 (8th Cir. 1999)..............................................................................30

*Barnett Bank of Marion County, N.A. v. Nelson,*
   517 U.S. 25 (1996).......................................................................... 11, 20, 22, 23

*Bass v. Janney Montgomery Scott, Inc.,*
   Nos. 03-6489, 04-5951, 2005 U.S. App. LEXIS 2005 (6th Cir.) ......................27

*Bud Antle v. Barbarosa,*
   45 F.2d 1261 (9th Cir. 1994)..............................................................................18

*Burgio and Campofelice v. NYS Department of Labor,*
   107 F.3d 1000 (2d Cir. 1997).............................................................................17

*Catz v. Chalker,*
   142 F.2d 279 (6th Cir. 1998)..............................................................................26

*Franklin National Bank v. New York,*
   347 U.S. 373 (1954)...........................................................................................21

*Golden State Transit Corp. v. Los Angeles,*
    493 U.S. 103 (1989) ............................................................................18

*Gonzaga v. Doe,*
    563 U.S. 273 (2002) ............................................................ 21, 22, 26

*Harrington v. Vandalia-Butler Board of Education,*
    549 F.2d 434 (6th Cir. 1981) ...........................................................27

*Keller v. Golden,*
    No. 08-55815, 2009 U.S. App. LEXIS 24890 (9th Cir.) .................27

*League of Women Voters v. Blackwell,*
    340 F. Supp. 2d 823 (N.D. Ohio 2004) ...........................................18

*Med-Trans. Corp. v. Benton,*
    581 F. Supp. 2d 721 (E.D.N.C. 2008) ....................................... 30, 32

*Morales v. TWA,*
    504 U.S. 374 (1992) ...................................................... 29, 31, 32, 33

*Paige v. Coyner,*
    614 F.3d 273 (6th Cir. 2010) ...........................................................28

*Penobscot Nation and Passamaquoddy Tribe v. Georgia Pacific Corporation,*
    106 F. Supp. 2d 81 (D. Me. 2000) ...................................................15

*Pharmaceutical Research and Manufacturers of America v. Concannan,*
    249 F.3d 66 (1st Cir. 2001) ..............................................................17

*Planned Parenthood v. Sanchez,*
    403 F.3d 324 (5th Cir. 2005) ...........................................................18

*Playboy Enterprises v. Public Service Commission of Puerto Rico,*
    906 F.2d 25 (1st Cir. 1990) ..............................................................15

*Qwest v. Santa Fe,*
    380 F.3d 1258 (10th Cir. 2004) .......................................................17

*Shaw v. Delta Airlines,*
    463 U.S. 85 (1983) .............................. 2, 12, 13, 14, 15, 16, 17, 28, 29

*Tri-Corp Management Company v. Praznik,*
  2002 U.S. App. LEXIS 6199 (6th Cir.) ...............................................................10

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.,*
  535 U.S. 635 (2002) ........................................................ 13, 14, 15, 17

*Wachovia Bank v. Burke,*
  414 F.3d 305 (2d Cir. 2005).................................................... 23, 24, 25

*Western Air Lines, Inc. v. Port Authority of New York and New Jersey,*
  817 F.2d 222 (2d Cir. 1987)..................................................................18

*Western Air Lines, Inc.,*
  817 F.2d 222 (2d Cir. 1987)..................................................................19

## Statutes

12 U.S.C. §24 (Seventh) ................................................................ 19, 24

12 U.S.C. §371 ................................................................................ 20, 24

12 U.S.C. §484 ....................................................................................20

12 U.S.C. §85 ......................................................................................20

12 U.S.C. §92 ......................................................................................23

28 U.S.C. §1291 ...................................................................................2

28 U.S.C. §1331 ................................................... 1, 2, 10, 13, 14, 16, 19, 33

28 U.S.C. §1343(a)(3)................................................................ 2, 19, 33

42 U.S.C. §1983................................. 2, 3, 8, 17, 18, 19, 21, 22, 25, 26, 33

Ohio R.C. §2921.12(A)........................................................................7

Ohio R.C. §715.261 ............................................................................6

## Rules

Federal Rule of Civil Procedure 12(b)(6) ...........................................28

## Regulations

12 C.F.R. §34.4(a) ..............................................................................11

v

**Other Authorities**

13 Charles Alan Wright et al.,
   Federal Practice and Procedure §3573.1 (3d ed. 2008) ......................................25

## STATEMENT OF WHY ORAL ARGUMENT SHOULD BE HEARD

Appellants declare that oral argument will assist this Court with the resolution of the significant legal issues in this case.

## JURISDICTIONAL STATEMENT

The U.S. District Court for the Northern District of Ohio (the "District Court") had jurisdiction over the suit below under 28 U.S.C. §1331 because the plaintiffs applied for:  1) a declaratory judgment that Appellee the City of Cleveland ("Cleveland") is preempted by federal law from regulating national banks, and 2) an injunction preventing Cleveland from attempting such regulation.

If Cleveland were to enact an ordinance regulating the types of loans which national banks could securitize, the ordinance would undoubtedly be preempted by federal law, yet Cleveland seeks to achieve the same result through litigation.  Cleveland is currently suing national banks and their affiliates in suits that are preempted by the National Bank Act and its implementing regulations. The U.S. Supreme Court held more than twenty-five years ago that federal courts have jurisdiction over such suits, stating that "[a] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, ***thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. §1331 to resolve.***"  *Shaw v. Delta Airlines,* 463 U.S.

85, 96 n. 14 (1983) (emphasis added). The *Shaw* holding has been repeatedly followed by this Court. *See Adrian Energy Associates v. Michigan Public Service Commission,* 481 F.3d 414, 420 (6th Cir. 2007) ("It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."); *Ammex, Inc. v. Cox,* 351 F.3d 697, 702 (6th Cir. 2003) ("The Supreme Court's decision in *Shaw v. Delta Air Lines, Inc.* makes clear that a federal court has subject matter jurisdiction when a person seeks to enjoin state officials from enforcing a state regulation against the person on the ground that the regulation violates federal rights.") The District Court also had jurisdiction under both 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3), because the plaintiffs stated a valid claim under 42 U.S.C. §1983.

The District Court entered a final judgment on all claims on August 5, 2010. A notice of appeal was timely filed on September 3, 2010. This Court has jurisdiction under 28 U.S.C. §1291 to review the District Court's judgment.

## STATEMENT OF ISSUES

1)    Did the District Court err when it held, contrary to the rulings of both the U.S. Supreme Court and this Court, that it lacked jurisdiction to declare that an attempted state regulatory action was preempted by federal law?

2)      Did the District Court err when it held that the right of national banks to exercise their enumerated powers under the National Bank Act free from improper state regulation is not a right protected by 42 U.S.C. §1983?

3)      Did the District Court err in dismissing a complaint that asked for an injunction for alleged failure to show irreparable harm, giving neither party the chance to brief the issue of irreparable harm, and raising the issue for the first time, *sua sponte*, in the dismissal opinion?

4)      Did the District Court err when it dismissed a request to enjoin a federally preempted state court lawsuit on the ground that the plaintiff had not shown irreparable harm, when the state court lawsuit was and is actively proceeding, and could potentially inflict severe damages, and sweeping discovery requests, on the Appellants?

## STATEMENT OF THE CASE

Appellants Chase Bank USA, N.A., JPMorgan Chase Bank, N.A., and JPMorgan Mortgage Acquisition Corp. (collectively the "Original Plaintiffs") filed the action below on February 28, 2008, asking—under the U.S. Constitution's Supremacy Clause, the National Bank Act, and 42 U.S.C. §1983—for 1) a declaration that state law could not be used to regulate national banks' lending and securitizing activities, and 2) an injunction preventing Cleveland from attempting

such regulation in the guise of a lawsuit. *See* Record Entry ("R.E.") 1, February 28, 2008 Complaint ("Original Complaint") at 11-12.

On October 19, 2009, the Original Plaintiffs and Appellant J.P. Morgan Securities, Inc. (collectively "the Chase Group") filed an amended complaint (the "Amended Complaint", at R.E. 29) which again asked for declaratory and injunctive relief against Cleveland's attempted regulation of national banks. The Amended Complaint specifically asked for a declaration and injunction barring a lawsuit which Cleveland had brought in state court (the "State Lawsuit") between the filing of the Original and Amended Complaints. Cleveland moved to dismiss the Amended Complaint for lack of subject matter jurisdiction.

The District Court granted Cleveland's motion in part, dismissing the Chase Group's suit without prejudice. *See* August 5, 2010 Judgment Entry ("Judgment") at R.E. 39. In its August 5 Memorandum Opinion ("Opinion", at R.E. 38) the District Court, although holding that it lacked subject matter jurisdiction over the Chase Group's request for declaratory judgment, admitted that under precedent from both the U.S Supreme Court and this Court, it could issue the requested injunction. Opinion at 11, 14-15. The court also held that Cleveland's nuisance claim was an attempted government regulation, and that Cleveland "cannot be treated as a private citizen pursuing its legal rights through litigation." Opinion at 13-14.

4

However, the District Court considered (on Cleveland's jurisdictional Motion to Dismiss) whether the Chase Group could show irreparable harm in support of an injunction, although neither party had raised this subject. Opinion at 15. The court held that, even though it had jurisdiction to enjoin the State Lawsuit if that lawsuit was preempted by federal law, the Chase Group could not show irreparable harm so long as preemption could be raised as a defense in the State Lawsuit. Opinion at 17-18. The District Court therefore dismissed the Chase Group's suit without prejudice, and the Chase Group appeals from that dismissal.

## STATEMENT OF FACTS

This suit arises from Cleveland's efforts to fasten liability for its urban ills on the financial industry.[1] On January 10, 2008, Cleveland filed an action, since removed to federal court (the "Federal Lawsuit"), suing a number of financial institutions on the ground that the securitization of subprime mortgages in Cleveland was a public nuisance under Ohio law. *See* Opinion at 1-2 (R.E. 38); *see also* Northern District of Ohio Case *Cleveland v. Deutsche Bank Trust Co., et al.,* Case No. 1:08CV139. In this suit, Cleveland claimed that Cleveland's housing "plight rests principally with subprime's so-called "securitizers" – investment

---

[1] The Statement of Facts is largely taken from the District Court's factual findings. *See* Opinion at 1-4. There is little dispute as to the relevant facts.

5

banking firms from Wall Street."[2]    Cleveland did not claim that all loan securitizations were bad, only (apparently) sub-prime mortgages in Cleveland because of the "unique" situation there.[3]    Cleveland did not name the Original Plaintiffs in this suit as initial defendants in the Federal Lawsuit,[4] although they were later added on October 8, 2008.  *See* Opinion at 1 (R.E. 38).    The District Court dismissed the Federal Lawsuit, and this Court has both affirmed the dismissal and declined Cleveland's request for *en banc* review.

Shortly after Cleveland filed the Federal Lawsuit, the Original Plaintiffs – who were not then parties to it – brought the instant suit, asking for declaratory and injunctive relief, due to federal preemption, against both the Federal Lawsuit and any similar suits which Cleveland might bring.  *See* Opinion at 3.  Later, on August 22, 2008, Cleveland brought the State Lawsuit against several financial institutions, including two members of the Chase Group.  *See* Opinion at 3; *see also* Cuyahoga County Common Pleas Case No. CV 08-668608. The State Lawsuit contained the same common-law public nuisance claim as did the Federal Lawsuit, and also contained claims for recovery of demolition costs under Ohio R.C. §715.261, and for alleged violation of Ohio's Corrupt Activities

---

[2] R.E. 9-3, Federal Lawsuit Complaint (as filed in state court before removal, and attached as an exhibit to a motion filed in the suit below) at ¶6.

[3] *See id.* at ¶4.

[4] The Original Plaintiffs in this suit were Chase Bank U.S.A., N.A., JPMorgan Chase Bank, N.A. and JPMorgan Mortgage Acquisition Corp.

Act (§2921.12(A)).  *See* Opinion at 3.  After Cleveland filed the State Lawsuit, the Chase Group filed the Amended Complaint in this suit, asking for both a declaration that the State Lawsuit was preempted by federal law, and for an injunction that would prevent the State Lawsuit from proceeding.  Thus, the chronology of the relevant actions can be briefly summarized as follows:

1) January 10, 2008—Cleveland files Federal Lawsuit (originally in state court, but subsequently removed), suing for common-law public nuisance against numerous financial institutions.

2) February 28, 2008—The Original Plaintiffs in the suit below, none of whom were then parties to the Federal Lawsuit, bring this suit, asking for a declaration and an injunction preventing Cleveland from suing them under a federally preempted cause of action.

3) August 22, 2008—Cleveland files the State Lawsuit, naming as defendants some of the Original Plaintiffs in this suit.  The State Lawsuit contains a nuisance claim that is virtually identical to that found in the Federal Lawsuit.

4) October 19, 2009—The Original Plaintiffs and Appellant J.P. Morgan Securities, Inc. (collectively "the Chase Group") file an Amended Complaint in the suit below, again asking for declaratory and injunctive relief against Cleveland's attempted regulation of national banks.

The District Court dismissed the Amended Complaint without prejudice, and the Chase Group now appeals from that dismissal.

## SUMMARY OF ARGUMENT

Since only the Federal Government can regulate national banks, the Chase Group filed the suit below to stop Cleveland from attempting such regulation through a lawsuit. Both the U.S. Supreme Court and this Court have repeatedly held that federal jurisdiction exists (along with an accompanying cause of action) to issue declaratory judgments and injunctions against state activities that are preempted by federal law. However, the District Court mistakenly held that it lacked subject matter jurisdiction over the Chase Group's request for declaratory judgment. The District Court also erred in holding that national banks' long-established right to exercise their enumerated powers free from state interference is not a right protected under 42 U.S.C. §1983.

Further, the District Court *sua sponte* held that the Chase Group could not show irreparable harm in support of an injunction, although the parties had not mentioned this subject in their briefing on Cleveland's jurisdictional motion to dismiss. This holding was not only procedurally unfair, as the Chase Group never had the opportunity to address the issue, but also substantively incorrect, as the U.S. Supreme Court has firmly held that the irreparable harm doctrine does not bar

injunctions against preempted state activities in circumstances like those the Chase Group faces here.

For all of these reasons, more fully set forth below, the Chase Group respectfully asks this Court to reverse the District Court's Judgment and Opinion.

# ARGUMENT

## I.    THIS COURT'S REVIEW OF THE DISTRICT COURT'S DECISION IS *DE NOVO.*

Here, the Chase Group appeals from a decision dismissing a case for lack of subject matter jurisdiction.  In such an appeal (particularly given that Cleveland's attack on jurisdiction was facial rather than factual),[5] this Court's review of the District Court's decision, on all issues on this appeal, is *de novo.  See Tri-Corp Management Company v. Praznik,* No. 00-4326, 2002 U.S. App. LEXIS 6199 at *9 (6th Cir.) (holding that dismissals for lack of subject matter jurisdiction are reviewed *de novo,* and that material allegations in the complaint are taken as true and construed most favorably to the non-moving party).

## II.    THE FEDERAL COURTS HAVE JURISDICTION, UNDER 28 U.S.C. §1331, OVER SUITS FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST FEDERALLY PREEMPTED STATE ACTIONS.

A party threatened by a federally preempted state action may ask the federal courts for a declaration that the state action is preempted, and for an injunction to keep that action from happening.  Here, the Chase Group is threatened by precisely such a preempted state action, namely, Cleveland's attempt to regulate national banks through Ohio's common law of nuisance.

---

[5] *See* Opinion at 4-5 (R.E. 38) (characterizing Cleveland's motion to dismiss as a facial attack on subject matter jurisdiction).

The National Bank Act and its implementing regulations have long been held to preempt state regulation of national banks.[6]   In the words of the U.S. Supreme Court, there is a "history … of interpreting grants of both enumerated and incidental "powers" to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law."  *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 32 (1996).  Moreover, national banks are regulated by the Office of the Comptroller of the Currency ("OCC"), which has declared through regulations issued pursuant to the National Bank Act that "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers ***do not apply to national banks.***"  12 C.F.R. §34.4(a) (emphasis added).  Specifically, the OCC has stated that:

> [A] national bank may make real estate loans…without regard to state law limitations concerning…(3) Loan-to-value ratios; (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance payments due, minimum payments, or term to maturity of the loan…(5) ***The aggregate amount of funds that may be loaned upon the security of real estate;***…(10) Processing, origination, servicing, ***sale or purchase of, or investment or participating in, mortgages.***"

*Id.* (emphasis added).

---

[6] Although the Chase Group here sets forth, for the information of this Court, a very brief summary of its preemption argument, the merits of its preemption claim are not before this Court, as they were never reached by the District Court.

Cleveland's Federal and State Lawsuits directly interfere with the core banking activities protected by this OCC regulation. The premise of these lawsuits – that a national bank's securitization of loans can be a state law nuisance – would itself reverse the preemptive effect of the National Bank Act and the OCC regulations that implement it. This is especially the case when Cleveland does not allege that all subprime securitizations are improper, but only those related to the "unique circumstances" in the Cleveland market.[7]  Any court, to rule in Cleveland's favor, would have to decide when "circumstances" are so "unique" in a given market that securitization of mortgages on properties in that market ceases to be lawful, and becomes a nuisance instead. Such a judicial ruling would practically amount to a regulatory code for loan securitizations, something completely beyond any state's ability to impose on national banks.

Here, the Chase Group sued to stop such a clearly preempted state action, and the District Court erred in dismissing the suit. The United States Supreme Court has long held that federal courts have jurisdiction over preemption-based suits for declaratory and injunctive relief. In *Shaw v. Delta Airlines,* "companies subject to ERISA regulation … [sought] injunctions against enforcement of state laws they claim *are* preempted by ERISA, as well as declarations that those laws are pre-empted." *Shaw v. Delta Airlines,* 463 U.S. 85,

---

[7] *See* R.E. 9-3, Federal Lawsuit Complaint at ¶4. Cleveland's nuisance claim in the State Lawsuit is virtually identical. *See* Amended Complaint (R.E. 29) at ¶5.

96 n. 14 (1983).  The Court held that the "plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, ***thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. §1331 to resolve.***"  *Id.* (emphasis added).  *See also Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002) (holding that "[w]e have no doubt that federal courts have jurisdiction under §1331 to entertain such a suit [since] Verizon seeks relief from the Commission's order on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail.")

This Court has repeatedly applied the *Shaw-Verizon* doctrine.  *See Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003) (stating that "[t]he Supreme Court's decision in *Shaw v. Delta Air Lines, Inc.* makes clear that a federal court has subject matter jurisdiction when a person seeks to enjoin state officials from enforcing a state regulation against the person on the ground that the regulation violates federal rights."); *Adrian Energy Associates v. Michigan Public Service Commission,* 481 F.3d 414, 420 (6th Cir. 2007) ("It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights.")

13

The District Court recognized the force of these precedents, yet mistakenly interpreted them to cover only requests for injunctive relief, and not requests for declaratory judgment.[8]   This distinction would be impossible in practice (a court could not enjoin a state action on preemption grounds without declaring that the action is preempted), and contradicts the governing case law as well.  Every one of the U.S. Supreme Court and Sixth Circuit decisions cited above involved requests for both declaratory and injunctive relief, and in none of those decisions was the declaratory judgment claim dismissed.  *See Shaw*, 463 U.S. at 96 n. 14 (noting that the "companies subject to ERISA regulation seek injunctions against enforcement of state laws … ***as well as declarations that those laws are pre-empted.***") (emphasis added); *Verizon*, 535 U.S. at 642 (stating that "[w]e have no doubt that the federal courts have jurisdiction under [28 U.S.C.] §1331 to entertain" Verizon's suit for "a declaratory judgment that the [Maryland Public Service] Commission's order was unlawful, and an injunction prohibiting its enforcement."); *Adrian*, 481 F. 3d at 418-419 (describing plaintiff's claims as asking for both declaratory judgment and injunctions).

This Court, in particular, was careful in the *Ammex* decision to hold that the Supreme Court had found jurisdiction over "an action for declaratory and injunctive relief."  *See Ammex*, 351 F.3d at 703.  The *Ammex* Court did observe

---

[8] *See* Opinion (R.E. 38) at 11, 14-15.

that there might be a different result if the suit sought "merely declaratory relief," but because the complaint in *Ammex* (and the Chase Group's complaint here) asked for an injunction, that complaint "properly invoke[d] subject matter jurisdiction."  *Id*. at 703 & fn. 4.  Against this precedent Cleveland cited cases which, as the District Court pointed out, arose from the irrelevant context of suits against private parties.  *See* Opinion at 13 (R.E. 38) (and cases cited at fn. 6 of that page).  None of these cases, however, could override the *Shaw-Verizon* holding that federal courts have jurisdiction over suits against state officials that seek declaratory and injunctive relief against federally preempted state activities.  *See Penobscot Nation and Passamaquoddy Tribe v. Georgia Pacific Corporation,* 106 F. Supp. 2d 81, 83 n. 4 (D. Me. 2000) (stating that although there was no jurisdiction over request to enjoin private parties for federal preemption reasons, "if the … [plaintiffs] were ***seeking to enjoin state officials, federal jurisdiction would exist.***") (emphasis added).

The District Court also invokes the rule that a declaratory judgment action cannot create federal jurisdiction over what is essentially a defense to a state law claim,[9] but this rule does not apply to cases covered by the *Shaw-Verizon* doctrine.  *See Playboy Enterprises v. Public Service Commission of Puerto Rico,* 906 F.2d 25, 29-30 (1st Cir. 1990) (recognizing the "general principle that in a suit

---

[9] *See* Opinion (R.E. 38) at 5-7.

for declaratory judgment, federal question jurisdiction cannot be based solely on the raising of a federal defense to a state law cause of action," but holding that *Shaw,* which authorizes preemptive suits for declaratory and injunctive relief against state officials, is a "limitation" on that general principle).

In short, the Supreme Court, this Court, and other Courts of Appeals have long recognized federal jurisdiction under 28 U.S.C. §1331 when a plaintiff asks both for a declaration that a given state action is preempted by federal law, and for an injunction to block state officials from carrying out that action. This is precisely what the Chase Group has asked for here, and because the District Court contradicted well-settled law in dismissing the Chase Group's request for declaratory judgment, that dismissal should be reversed.

**III.    THE CHASE GROUP HAS A VALID CAUSE OF ACTION UNDER BOTH THE SUPREMACY CLAUSE AND 42 U.S.C. §1983.**

**A.    The Supremacy Clause Creates An Implied Right of Action For Preemption Actions Against State Officials.**

The District Court questioned the Chase Group's ability to sue for violations of the Supremacy Clause,[10] but this ability has been recognized by several federal appellate courts as a logical corollary to the U.S. Supreme Court's decisions in *Shaw* and *Verizon.  See Burgio and Campofelice v. NYS Department of Labor,* 107 F.3d 1000, 1006 (2d Cir. 1997) (holding that "the Supremacy Clause creates an implied right of action against state officers who are threatening to violate the federal Constitution or laws"); *Qwest v. Santa Fe,* 380 F.3d 1258, 1266 (10th Cir. 2004) (stating that "[a] party may bring a claim under the Supremacy Clause that a local enactment is preempted *even if the federal law at issue does not create a private right of action.*") (emphasis added); *Pharmaceutical Research and Manufacturers of America v. Concannan,* 249 F.3d 66, 73 (1st Cir. 2001) ("We know of no governing authority to the effect that the federal statutory provision which allegedly preempts by conflict must confer a right on the party that argues in favor of preemption.  On the contrary, a state or territorial law can be unenforceable as preempted by federal law *even when the federal law secures no individual or substantive rights for the party arguing preemption*.") (emphasis

---

[10] *See* Opinion (R.E. 38) at 7-8.

added, internal citations omitted); *Planned Parenthood v. Sanchez,* 403 F.3d 324, 333 (5th Cir. 2005) (following other circuits in recognizing "***an implied cause of action to bring preemption claims seeking injunctive and declaratory relief even absent an explicit statutory claim***.") (emphasis added); *Bud Antle v. Barbarosa,* 45 F.2d 1261, 1269 (9th Cir. 1994) ("***Even in the absence of an explicit statutory provision establishing a cause of action, a private party may ordinarily seek declaratory and injunctive relief*** against state action on the basis of federal preemption.") (emphasis added).[11]

The cases relied upon by the District Court are not to the contrary. The U.S. Supreme Court's decision in *Golden State Transit Corp. v. Los Angeles,* (cited on page 8 of the Opinion) did not deny that the Supremacy Clause creates an implied right of action for preemption against state officials, but held instead that that Clause did not automatically secure a claim under 42 U.S.C. §1983.  *See Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107-108 (1989). Similarly, in *Western Air Lines, Inc. v. Port Authority of New York and New Jersey,* – also cited by the District Court[12] – the Court of Appeals for the Second Circuit affirmed a ruling that "[d]espite the lack of a private right of action to

---

[11] *See also League of Women Voters v. Blackwell*, 340 F. Supp. 2d 823, 827 (N.D. Ohio 2004) ("[I]n suits against state officials for declaratory and injunctive relief, a plaintiff may invoke the jurisdiction of the federal courts by asserting a claim of preemption, even absent an explicit statutory cause of action.")

[12] *See* Opinion at 8.

enforce the statutes … [the plaintiff] could bring a *Supremacy Clause* challenge to the perimeter rule by claiming that the rule is preempted." *Western Air Lines, Inc.,* 817 F.2d 222, 225 (2d Cir. 1987).

In short, the Chase Group, in asking for declaratory and injunctive relief against a preempted state action, has stated a claim under the Supremacy Clause as per well-settled law. For this reason as well, the District Court's dismissal of the Chase Group's claim for declaratory judgment should be reversed.

### B. The Chase Group Also States A Cause of Action Under 42 U.S.C. §1983, Which This Court Has Jurisdiction To Hear Under Both 28 U.S.C. §1331 And 28 U.S.C. §1343(a)(3).

As shown above, the Supremacy Clause itself creates a right of action for the Chase Group even without a statutory cause of action, but the Chase Group may also sue under 42 U.S.C. §1983.[13]    That section provides redress for state violations of federal rights, and such rights are conferred by the National Bank Act.

The Chase Group has sued under 12 U.S.C. §§24 (Seventh), 85, 371, and other relevant provisions of the National Bank Act and federal banking laws. *See* Amended Complaint (R.E. 29) at ¶¶31-32, 44. These statutes confer upon national banks the right to exercise certain powers free from state interference. Section 24 (Seventh) of the National Bank Act (12 U.S.C.) gives national banks

---

[13] 28 U.S.C. §1343(a)(3) confers jurisdiction over claims brought pursuant to 42 U.S.C. §1983. Such claims would also be included under general federal question jurisdiction pursuant to 28 U.S.C. §1331. Therefore, so long as the Chase Group has a valid §1983 claim, the federal courts have jurisdiction to hear it.

the power to "carry on the business of banking; by discounting and negotiating promissory notes…and other evidences of debt; by receiving deposits … by loaning money on personal security …. [and by purchasing] for its own account investment securities under such limitations as the Comptroller of the Currency may be regulation prescribe."  Section 85 allows a national bank to use the interest rate ceiling of the state where it is headquartered, and Section 371 authorizes national banks to engage in the real estate lending business.  Finally 12 U.S.C. §484 expressly states that national banks shall not be subject to state visitorial power.

Federal law, in conferring powers upon national banks, supersedes conflicting state rules.  As stated by the U.S. Supreme Court when interpreting a provision giving national banks the power to sell insurance in certain circumstances:

> In using the word "powers," the statute chooses a legal concept that, in the context of national bank legislation, has a history.  That history is ***one of interpreting grants of both enumerated and incidental "powers" to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law.***

*Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 32 (1996).  Moreover, the U.S. Supreme Court has characterized the powers given to national banks—to be exercised free of state interference—as rights.  *See Franklin National*

20

*Bank v. New York,* 347 U.S. 373, 377-378 (1954) (holding that New York law was preempted as to national banks, and stating that federal law is "declaratory of the **right of national banks to enter or remain in that type of business** [in that case, receiving saving deposits].") (emphasis added).

Granted, the Supreme Court has not directly ruled on whether the rights conferred by the National Bank Act are enforceable through 42 U.S.C. §1983, but the language cited above, combined with the criteria laid down by the Supreme Court for recognizing §1983 claims, compels the conclusion that they are. Recently the Supreme Court, with respect to such claims, held that:

> Plaintiffs suing under §1983 **do not have the burden of showing an intent to create a private remedy** because §1983 generally supplies a remedy for the vindication of rights secured by federal statutes. Once a plaintiff demonstrates that a statute confers an individual right, **the right is presumptively enforceable by §1983.** But the initial inquiry – determining whether a statute confers any right at all – is no different from the initial inquiry in an implied right of action case, **the express purpose of which is to determine whether or not a statute confers rights on a particular class of persons.**

*Gonzaga v. Doe,* 563 U.S. 273, 284-85 (2002) (emphasis added).

Here, the relevant sections of the National Bank Act clearly confer a right – the right to exercise enumerated banking powers free of state interference – upon the specific class of national banking associations. Indeed, the Act makes no

sense if the national banks it authorizes and empowers lack the enforceable right to be free from state regulation. Given the Act's purpose and language, and given the Supreme Court's declarations in *Barnett* that powers conferred on national banks have been historically viewed as grants of authority to operate free of state interference,[14] there is no doubt that in the National Bank Act "Congress explicitly conferred a right directly on a class of persons that included the plaintiff in this case." *Gonzaga,* 536 U.S. at 285.

Further, this Court has recently affirmed the grant of a declaratory judgment and an injunction in a §1983 suit brought by a national bank against a preempted state law. *See Association of Banks in Insurance, Inc. v. Duryee*, 270 F.3d 397, 400-402 (6th Cir. 2001). In *Duryee*, a national bank claimed its statutory right to sell insurance in small towns (the same right at issue in *Barnett*), and this Court agreed with the bank, stating that "normally Congress would not want States to forbid, or to impair significantly, ***the exercise of a power that Congress explicitly granted*** … .States retain the power to regulate national banks ***only where doing so does not prevent or significantly interfere with the national bank's exercise of its powers***." *Duryee,* 270 F.3d at 405 (emphasis added, internal citations omitted). Thus, this Court has recognized, without questioning its

---

[14] *See Barnett,* 517 U.S. at 32.

jurisdiction to do so, a §1983 claim based on state preemption of the powers conferred on national banks.[15]

Moreover, the trial court in *Duryee* (U.S. District Court for the Southern District of Ohio) expressly stated that "the purpose of [12 U.S.C.] §92 ***was to especially benefit national banks, as opposed to merely protecting some general federal purposes.***" *Association of Banks in Insurance v. Duryee,* C2-98-1120, Feb. 9, 2000 unpublished Order at 11, (S.D. Ohio) (emphasis added) (attached in Addendum). The trial court held that the banks' "preemption argument under [12 U.S.C.] §92 is based on substantive rights contained in that statute ***which are enforceable under §1983.***" *Id.* at 12 (emphasis added). Thus, a federal district court within this Circuit has unambiguously determined that the powers conferred upon national banks by 12 U.S.C. create valid §1983 claims.

The District Court nonetheless refused to recognize the Chase Group's §1983 claim, relying largely on the Court of Appeals for the Second Circuit's decision in *Wachovia Bank v. Burke,* 414 F.3d 305 (2d Cir. 2005). *See*

---

[15] The District Court held that *Duryee* was not applicable because the statute at issue – 12 U.S.C. §92 – although part of the U.S. Code chapter that deals with national banks, was enacted as part of the Federal Reserve Act as opposed to the National Bank Act. *See* Opinion at 10, fn. 2. This distinction was not relevant either to this Court in *Duryee* or to the U.S. Supreme Court in *Barnett*: both courts analyzed the statute as part of national banking law. Further, it is impossible to understand how a section of the Federal Reserve Act that confers a power on national banks creates a §1983 claim, but a similar provision in the National Bank Act does not.

Opinion at 9-10. In that decision the Second Circuit conceded that the relevant provisions of the National Bank Act (largely the same provisions upon which the Chase Group relies),[16] "may focus on national banks," but held that as "instrumentalities of the federal government" they were not the recipients of statutory rights, but at most the incidental beneficiaries of a federal scheme of regulation. *Id.* at 322-23.

This Court, of course, is bound by its own precedent in *Duryee* rather than by that of the Second Circuit in *Wachovia*. Moreover, the *Wachovia* decision contradicts the purposes and history of the National Bank Act and the case law interpreting that Act. It is impossible to view the National Bank Act, as the *Wachovia* Court did, as creating a federal scheme of regulation of which national banks are only the incidental beneficiaries. The very "object of the National Bank Act was to establish a national banking system free from intrusive state regulation." *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 561 (9th Cir. 2002). Thus, the right of national banks to be free from state interference is the central aim of the Act, and not an incidental effect of it.

The *Wachovia* decision is therefore incorrect, but its holding, even if accurate, would not apply to this case. The *Wachovia* Court dealt with the

---

[16] In its Amended Complaint (at ¶44) the Chase Group cites to 12 U.S.C. §§24 (Seventh), and §§371, which were also at issue in *Wachovia. See Wachovia,* 414 F.3d at 322.

question of whether a state could exercise its visitorial powers over operating subsidiaries of national banks, and this issue could, arguably, be considered solely as a question affecting the division of power between federal and state governments. *See Wachovia,* 414 F.3d at 315 (identifying the "precise question" involved "as whether Congress has addressed the manner in which state law should apply to a national bank operating subsidiary."). This case, by contrast, involves not simply a question of allocating power between sovereigns, but a concrete right—the right to engage in the core banking activity of purchasing and securitizing loans—that is conferred by federal law on national banks. Such a right, as shown in the appellate and trial court *Duryee* opinions, is specific and definite enough to give rise to a §1983 claim.

Finally, the *Wachovia* Court's holding that national banks cannot have federally protected rights because they were established to assist with a governmental purpose is also incorrect. Corporations generally may vindicate their federal rights under §1983,[17] and there is no known exception for corporations (or other entities) whose activities help carry out a public purpose. Thus, to deny national banks protection under §1983 on this basis would be to carve out a specific exception from general §1983 law to be applied solely to national banks.

---

[17] *See* 13 Charles Alan Wright et al., Federal Practice and Procedure §3573.1 (3d ed. 2008).

For all of the foregoing reasons, this Court should follow its prior decision in *Duryee* and hold that a national bank's right to be free from state regulation that is preempted by the National Bank Act is a right that can be vindicated under 42 U.S.C. §1983. Such a right is expressly conferred by the National Bank Act in a manner that more than meets the Supreme Court's *Gonzaga* criteria for recognizing a §1983 cause of action. On this ground as well, the District Court's decision should be reversed.

## IV. THE DISTRICT COURT ERRED IN DISMISSING THE CHASE GROUP'S COMPLAINT FOR FAILURE TO SHOW IRREPARABLE HARM.

### A. The District Court Unfairly Dismissed the Chase Group's Complaint On The Issue of Irreparable Harm Without Opportunity For Briefing.

The Chase Group did not know, prior to the District Court's dismissal of the suit below for failure to show irreparable harm, that the District Court was even considering the issue. Cleveland had moved to dismiss solely for lack of subject matter jurisdiction, and neither party had mentioned irreparable harm in any way. The District Court simply raised the issue *sua sponte* in the Opinion dismissing the case.

This Court does not favor *sua sponte* dismissals; when one occurs, the losing party must have "notice and an effective opportunity to respond." *Catz v. Chalker,* 142 F.2d 279, 286 (6th Cir. 1998); *see also Harrington v. Vandalia-*

*Butler Board of Education,* 549 F.2d 434, 436-437 (6th Cir. 1981) (reversing grant of summary judgment because nonmovant did not have adequate opportunity to respond); *Bass v. Janney Montgomery Scott, Inc.,* Nos. 03-6489, 04-5951, 2005 U.S. App. LEXIS 2005 (6th Cir.) at \*7 n. 2 (stating that entry of judgment when parties did not have opportunity to respond on particular issue was improper "effective *sua sponte* dismissal"); *Keller v. Golden,* No. 08-55815, 2009 U.S. App. LEXIS 24890 at \*2 (9th Cir.) (holding that summary judgment may only be entered "*sua sponte* on an issue not raised by the moving party when no material issue of fact exists and the losing party has had an adequate opportunity to address the issues involved.")  Here, the District Court did not give the Chase Group any opportunity to respond on the issue of irreparable harm, which contradicts not only the cited precedent but the basic ideal of fairness underlying the judicial system.

The District Court not only raised the issue of irreparable harm *sua sponte* and without opportunity for briefing, but treated that issue as if it were ruling on a motion for preliminary injunction rather than weighing the sufficiency of a complaint.  No such motion had been filed, the District Court was only considering the pleadings, and yet that court stated that "the Chase Plaintiffs cannot, at this time, satisfy the requirements for an injunction because they cannot **demonstrate** the existence of irreparable harm."  Opinion at 15 (R.E. 38) (emphasis added).  Of course, at the pleadings stage the Chase Group only needed to allege –

not "demonstrate"—irreparable harm, and it did so allege.[18]  *See* Amended Complaint (R.E. 29) at ¶49.  Even if Cleveland had moved under Rule 12(b)(6) to dismiss the Chase Group's suit for failure to allege irreparable harm (which it never did), the District Court still could not have required the Chase Group to "demonstrate" irreparable harm to avoid dismissal.

In short, the District Could improperly dismissed the Chase Group's suit on an issue never raised, to which the Chase Group had no chance to respond, and while applying the wrong standard of review.  Basic fairness and this Court's precedent compel reversal of such a dismissal.

### B.    In The Alternative, The Chase Group's Amended Complaint States A Cause Of Action For Irreparable Harm.

As shown above, the District Court's *sua sponte* dismissal for alleged lack of irreparable harm was procedurally improper; it was also substantively incorrect.  The District Court admitted that it had jurisdiction—pursuant to *Shaw* and its progeny—to enjoin the State Lawsuit, but nullified that admission with the following syllogism:

> 1)    An injunction requires a showing of irreparable harm;

---

[18] *See Paige v. Coyner,* 614 F.3d 273, 277 (6th Cir. 2010) (holding that "[w]hen deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, the district court must construe the complaint in the light most favorable to the plaintiff and must accept all the factual allegations contained in the complaint as true. In order to survive a Rule 12(b)(6) motion to dismiss, … [a] complaint need contain only enough facts to state a claim to relief that is plausible on its face.") (internal citations omitted).

2)     Irreparable harm does not exist where there is an adequate remedy at law;

3)     The Chase Group has an adequate remedy at law so long as it can raise the defense of federal preemption in the State Lawsuit and therefore;

4)     The Chase Group is not entitled to enjoin the State Lawsuit.[19]

This syllogism, if accepted, would swallow the *Shaw* doctrine.  All state regulatory actions, by definition, would be immune to preemption challenges in federal court, and the *Shaw* holding extending jurisdiction to such challenges, along with the many federal appellate decisions which have implemented that holding, would become a dead letter.

It is therefore not surprising that the U.S. Supreme Court, nearly twenty years ago, rejected an argument similar to the District Court's syllogism.  In *Morales v. TWA,* the Court considered a suit to enjoin state attorneys general from enforcing federally preempted state airfare guidelines through state lawsuits.  504 U.S. 374, 381 (1992).  The *Morales* Court held that the equitable requirement of irreparable injury "does not prevent federal courts from enjoining state officers who threaten and are about to commence proceedings … to enforce against parties affected an unconstitutional act, violating the Federal Constitution."  *Id.*  The Court continued:

---

[19] *See* Opinion (R.E. 38) at 15-18.

> When enforcement actions are imminent – **and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses –there is no adequate remedy at law.** We think … that injunctive relief was available here. As we have described, the attorneys general … had made clear that they would seek to enforce the challenged portions of the guidelines … through suits under their respective state laws… .[R]espondents were faced with a Hobson's choice: continually violate the Texas law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review.

*Id.* (emphasis added).

Moreover, federal courts have specifically found that a company has suffered irreparable harm—such that it may seek to enjoin state regulations—when those regulations inflict economic loss. *See Bank One, Utah, N.A. v. Guttau,* 190 F.3d 844, 850-851 (8th Cir. 1999) (holding that national bank would suffer irreparable harm from state's attempt to regulate bank's ATM's); *see also Med-Trans. Corp. v. Benton,* 581 F. Supp. 2d 721, 743 (E.D.N.C. 2008) (stating that "inability to enter … [a] market … without first complying with the preempted laws and regulations constitutes irreparable injury," and further holding that air ambulance carrier was entitled to injunction against state regulations, and was not required either to risk liability by violating the law, or to "violate the law once as a

test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review.")

The foregoing analysis applies perfectly here. Cleveland's State Lawsuit is not only "imminent," it is actually happening, as Cleveland filed the State Lawsuit six months after the Chase Group brought this suit to enjoin such actions. *See* Opinion at 2-3. Moreover the Chase Group, like the respondents in *Morales,* faces repetitive penalties without the realistic option of "violating the law once" as a test case. Cleveland has claimed—both in the Federal Lawsuit and in the State Lawsuit—that in Ohio the core banking activity of loan securitization is a common-law nuisance. Cleveland does not argue that securitization is always or in all places a nuisance, but that given the "unique circumstances" in the Cleveland market the banks should have known better than to buy loans on properties there.[20]

Cleveland's amorphous nuisance claim leaves the Chase Group in the quandary described in *Morales.* Each loan purchased or securitized by the Chase Group on a property in the Cleveland area could, under Cleveland's theory, be a predicate for additional damages. Hence the Chase Group, to avoid additional exposure, must somehow refrain from securitizing loans that are "subprime" or otherwise objectionable, in markets that have whatever unique circumstances

---

[20] *See* R.E. 9-3, Cleveland's complaint in the Federal Action (as filed in state court before removal) at ¶¶4-9, 48-62. Cleveland's nuisance claim in the State Action is virtually identical. *See* Amended Complaint (R.E. 29) at ¶5.

Cleveland claims for itself.  Since this floating nuisance standard is impossible to define, the Chase Group cannot comply with the alleged state law short of the utterly unrealistic course of completely exiting the primary and secondary loan markets in Ohio.[21]  Thus, under the logic of *Morales* the Chase Group has no adequate remedy at law, and is entitled to a federal injunction preventing Cleveland from using Ohio nuisance law to regulate activities authorized by the National Bank Act.

Moreover, the State Lawsuit could inflict not only severe damages and penalties on the Chase Group, but severe discovery obligations as well. Responding to queries as to the securitization of all loans connected with Cleveland-area properties would be extremely burdensome.  The Chase Group should not have to respond to burdensome and oppressive discovery in a suit that is preempted by federal law to begin with.

For all of these reasons the Chase Group sufficiently alleged irreparable harm, and the District Court's *sua sponte* dismissal of the suit below on that basis should be reversed.

---

[21] As per *Benton,* a litigant has suffered irreparable harm when it is shut out of a market because of federally preempted state regulations.  *See Benton,* 581 F. Supp. 2d at 743.   *See also ABC Charters, Inc. v. Bronson,* 591 F. Supp. 2d 1272, 1309 (S. D. Fla. 2008) (granting injunction requested by charter airlines against preempted state travel law, as "irreparable harm may result from the loss of a central, key component of the business.")

## <u>CONCLUSION</u>

The District Court's Judgment and Opinion were mistaken for the reasons given above. Therefore, the Chase Group asks this Court for the following relief:

1)    to reverse the District Court's Judgment and Opinion;

2)    to hold that:

a)    the Chase Group's Amended Complaint states a cause of action under the Supremacy Clause which the District Court has jurisdiction to hear under 28 U.S.C. §1331;

b)    the Chase Group's Amended Complaint states a cause of action under 42 U.S.C. §1983 which the District Court has jurisdiction to hear under both 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3); and

c)    the Chase Group's Amended Complaint, under the U.S. Supreme Court's decision in *Morales v. TWA* and subsequent case law, adequately alleges irreparable harm.

3)    to remand to the District Court for further proceedings governed by the holdings in the preceding paragraph.

Respectfully submitted,

/s/    Isaac Schulz
Isaac Schulz (0021009)
Michael N. Ungar (0016989)
Richik Sarkar (0069993)
Isaac J. Eddington (0072966)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
216-583-7000 / Fax: 216-583-7001
ischulz@ulmer.com
mungar@ulmer.com
rsarkar@ulmer.com
ieddington@ulmer.com

*Counsel for Appellants Chase Bank USA, N.A, JPMorgan Chase Bank, N.A., JPMorgan Mortgage Acquisition Corp., and J.P. Morgan Securities Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,874 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003  in 14 pt. Times New Roman font.

/s/ Isaac J. Eddington
One of the Attorneys for Appellants

## **CERTIFICATE OF SERVICE**

I certify that on November 17th, 2010 the Brief of Plaintiffs-Appellants was served on counsel for Defendant-Appellee, by email through the CM/ECF system.

/s/    Isaac Schulz
*One of the Attorneys for Appellants Chase Bank USA, N.A, JPMorgan Chase Bank, N.A., JPMorgan Mortgage Acquisition Corp., and J.P. Morgan Securities Inc.*

## **ADDENDUM**

## **DESIGNATION OF DISTRICT COURT DOCUMENTS**

Pursuant to Sixth Circuit Rules 28(c) and 30(b), Appellants hereby designate the following relevant district court documents:

| **Record Entry No.** | **Description** |
| --- | --- |
| **1** | **Complaint** |
| **9-3** | **Federal Lawsuit Complaint** |
| **29** | **Amended Complaint** |
| **38** | **Memorandum Opinion** |
| **39** | **Judgment Entry** |

## __UNPUBLISHED CITED AUTHORITY__

*Association of Banks in Insurance v. Duryee,*
 C2-98-1120, Feb. 9, 2000 (unpublished Order) (S.D. Ohio)


(See Following Pages)

FILED

FEB 09 2000

Kenneth J. Murphy, Cler
Columbus, Ohio

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Association of Banks in
Insurance, Inc., et al.,

       Plaintiffs,

       v.                   Case No. C2-98-1120

Harold T. Duryee, in his
official capacity as
Superintendent of the
Ohio Department of Insurance,

       Defendant,

   and

Independent Insurance Agents of
Ohio, Inc., et al.,

       Intervening Defendants.

## ORDER

The plaintiffs in this case sought a declaratory judgment and injunctive relief under 42 U.S.C. §1983 and 28 U.S.C. §2201. The plaintiffs claimed that certain Ohio statutes relating to the licensing of insurance agents conflicted with federal law and were therefore pre-empted by operation of the Supremacy Clause of the United States Constitution, Art. VI, cl. 2. The plaintiffs contended that Ohio Revised Code §§3953.21(B), 3905.02(B), 3905.02(E)(1) and (2), 3905.03(A)(5), 3905.04, 3905.18(C) and (D), and 3905.16(G)(1) and (2) were pre-empted by §13 of the Federal Reserve Act, 12 U.S.C. §92, which authorizes national banks to act as insurance agents in small towns with 5,000 or less inhabitants, and by 12 U.S.C. §26, which grants exclusive authority to the Comptroller of the Currency to determine whether a corporation or

association is lawfully entitled to do business as a national bank. In a decision rendered on June 18, 1999, this court found that those sections of the Ohio Revised Code were in fact pre-empted by federal law.

This matter is before the court on the plaintiffs' motion pursuant to 42 U.S.C. §1988 and Fed. R. Civ. P. 54(d) for an award of attorney's fees and costs. This motion is opposed by both defendant Duryee and the intervening defendants. The plaintiffs indicate in their reply memorandum, at page 5, that they are not currently seeking an award of attorney's fees against the intervening defendants, but may later do so if the plaintiffs prevail in the appeal of this case filed by the intervenors which is currently pending before the Sixth Circuit Court of Appeals. Therefore, the court finds that any request for attorney's fees against the intervenors is not yet ripe, and that branch of the motion is denied without prejudice.

The plaintiffs sought relief under 42 U.S.C. §1983, as well as declaratory relief under 28 U.S.C. §2201. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Standing alone, §1983 does not provide any substantive rights. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 618 (1979). Rather, §1983 is simply a jurisdictional vehicle to pursue claims based upon the deprivation of substantive rights arising

2

under another federal statute or the Constitution. Id. However, the coverage of §1983 must be broadly construed. Dennis v. Higgins, 498 U.S. 439, 445 (1991).

Plaintiffs who prevail on a claim under §1983 are entitled to seek attorney's fees under 42 U.S.C. §1988. That section provides in relevant part:

> In any action or proceeding to enforce a provision of section[] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs....

Attorney's fees are available under §1988 regardless of whether the claim is based on a violation of a constitutional right or a right based on a federal statutory provision. Maine v. Thiboutot, 448 U.S. 1, 9 (1980).

Defendant Duryee argues that the plaintiffs are not entitled to attorney's fees under §1988 because the plaintiffs' claims were based upon the Supremacy Clause, which confers no rights subject to redress under §1983.

The Supreme Court has held that the mere allegation of incompatibility between federal and state statutes and regulations invoking the operation of the Supremacy Clause does not, in itself, give rise to a claim "secured by the Constitution." Chapman, 441 U.S. at 615. That clause is not a source of any federal rights, but rather it secures federal rights by according them priority whenever they come in conflict with state law. Id. at 613. "'[P]reemption of state law under the Supremacy Clause--being grounded not on individual rights but instead on considerations of power--will not support an action under section 1983, and will not,

3

therefore, support a claim for attorneys' fees under section 1988.'" Associated General Contractors San Diego Chapter, Inc. Apprenticeship & Training Trust v. Smith, 74 F.3d 926, 931 (9th Cir. 1996)(quoting Segundo v. City of Rancho Mirage, 813 F.2d 1387, 1394 (9th Cir. 1987)).

The Supreme Court noted in Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 108 (1989)(Golden State II) that "it would obviously be incorrect to assume that a federal right of action pursuant to §1983 exists every time a federal rule of law pre-empts state regulatory authority." On the other hand, "the fact that a federal statute has pre-empted certain state action does not preclude the possibility that the same federal statute may create a federal right for which §1983 provides a remedy." Id. at 108. In circumstances where "congressional pre-emption benefits particular parties only as an incident of the federal scheme of regulation, a private damages remedy under §1983 may not be available." Id. at 109. "[A] Supremacy Clause claim based on a statutory violation is enforceable under §1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff." Id., n. 4.

The Court in Golden State II, 493 U.S. at 108, set forth three factors for determining whether a federal statute confers a "right" within the meaning of §1983:

> In all cases, the availability of the §1983 remedy turns on whether the statute, by its terms or as interpreted, creates obligations "sufficiently specific and definite" to be within "the competence of the judiciary to enforce," Wright [v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 432 (1987)], is intended

to benefit the putative plaintiff, and is not foreclosed
"by express provision or other specific evidence from the
statute itself," id., at 423.

As this test was later phrased in Blessing v. Freestone, 520 U.S.
329, 340 (1997), the plaintiff must show that Congress intended
that the statute in question benefit the plaintiff, that the
asserted right is not "so vague and amorphous that its enforcement
would strain judicial competence" and that the statutory provision
unambiguously imposes a binding obligation on the state and is
"couched in mandatory rather than precatory terms."

In Golden State Transit Corp. v. City of Los Angeles, 475
U.S. 608 (1986) (Golden State I), the Supreme Court held that the
city's policy of conditioning the renewal of the plaintiff's
taxicab franchise on settlement of a pending labor dispute between
the plaintiff and its union was pre-empted under the National Labor
Relations Act ("NLRA").  The Court concluded in Golden State II
that its prior holding--that the city's conduct was pre-empted
under the NLRA--was within the competence of the judiciary to
enforce, that the plaintiff was the intended beneficiary of the
statute's scheme preventing governmental interference with the
collective-bargaining process, and that the statute provided for no
comprehensive enforcement scheme which would preclude a §1983
action.  493 U.S. at 108-109.  Thus, the Court held that the
plaintiff's pre-emption claim was one  subject to redress under
§1983.  Id. at 113.  In so holding, the Court noted that the fact
that the duties of the city were not expressly set forth in the
text of the statute did not preclude a finding that the statute

5

protected certain rights of labor and management against governmental interference. Id. at 111. The Court also distinguished the pre-emption in the case before it, stemming from state abridgment of a protected individual interest, from the NLRA pre-emption claim raised in <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236 (1959), which was grounded in the need to vindicate the primary jurisdiction of the National Labor Relations Board. <u>Id.</u> at 110.

Several cases since <u>Golden State II</u> have addressed the issues of whether a pre-emption claim also entails a right enforceable under §1983. In <u>Livadas v. Bradshaw</u>, 512 U.S. 107 (1994), the Supreme Court again addressed a pre-emption argument under the NLRA. In that case, the Court held that the state official's policy of refusing to enforce a state law requiring the immediate payment of any wages due upon termination of employment where the employee was governed by a collective-bargaining agreement containing an arbitration clause was pre-empted by the NLRA. <u>Id.</u> at 132. The Court further concluded that the defendant's violation of the plaintiff's rights under the NLRA to complete the collective-bargaining process and to agree to an arbitration clause were subject to redress under §1983.

In <u>Howard v. City of Burlingame</u>, 937 F.2d 1376 (9th Cir. 1991), the plaintiff was a ham radio operator who wanted to construct a radio tower which was higher than that allowed by the local zoning authorities. Although agreeing with the district court's determination that the local ordinances were partially pre-

6

empted by federal law, the court decided that none of the applicable federal statutes, regulations or rulings of the Federal Communication Commission gave ham operators such as the plaintiff the right to have the antenna of their choice, nor did they purport to create binding obligations on local governments to allow antennas of any particular height. Id. at 1375. The court further found that the federal laws were intended to benefit the general public and to promote the federal interest in amateur radio operations rather than the specific interests of any individual amateur radio operator. Id. at 1379-80. The court concluded that the plaintiff's pre-emption argument did not vest him with any enforceable rights under §1983. Id. at 1380. See also Baskin v. Bath Township Board of Zoning Appeals, 101 F.3d 702 (unpublished), 1996 WL 678228 (6th Cir. 1996).

Defendant Duryee relies on Gustafson v. City of Lake Angelus, 76 F.3d 778 (6th Cir. 1996), where the plaintiff alleged that local nuisance ordinances prohibiting the landing of his seaplane on a lake were pre-empted by Federal Aviation Administration regulations. However, while the court affirmed the refusal to award attorney's fees, noting, id. at 792, that a claim based on pre-emption is not cognizable under §1983, the court found that the local laws were not pre-empted, and did not engage in an analysis under Golden State II.

In Waste Management Holdings, Inc. v. Gilmore, 64 F.Supp.2d 537 (E.D.Va. 1999), the plaintiffs sought declaratory and injunctive relief to prevent the state of Virginia's enforcement of

7

various state laws aimed at curtailing flow of out-of-state municipal solid waste into the state. The plaintiff successfully asserted that certain federal seagoing vessel licensing provisions contained in 46 U.S.C. §§12103 and 12106 pre-empted the state laws. The court noted that the Supreme Court had previously held in Douglas v. Seacoast Products, Inc., 431 U.S. 265, 281 (1977) that a federal license confers upon the licensee the right to operate freely in each state's waters, subject only to legitimate exercises of the state's police power. Id. at 547. The court decided that the federal provisions were intended to benefit at least one of the plaintiffs, whose barges were federally licensed to engage in the coastwise trade. Id. The court further found that the right articulated by the Supreme Court in Douglas was not "vague" or "amorphous", and that the fact that the state's obligations not to interfere with the plaintiff's rights under the federal licensing statutes were not expressly set forth in those statutes did not preclude a finding that the state did in fact have such obligations. Id. at 547-548 (citing Golden State II, 493 U.S. at 111-112). The court concluded that the federal licensing provisions created rights in the plaintiffs under §1983.

In National Warranty Insurance Co. v. Greenfield, 24 F.Supp.2d 1096 (D.Or. 1998), the court addressed a pre-emption issue similar to that in the instant case. The plaintiff, a risk retention group ("RRG") in the business of selling product liability insurance to automobile dealers, argued that certain Oregon statutes which precluded RRGs chartered outside the state of Oregon from selling

8

such insurance in that state were pre-empted by the Product
Liability Risk Retention Act of 1981 ("PLRRA"), 15 U.S.C. §§3901 et
seq., as amended by the Liability Risk Retention Act of 1986
("LRRA"). The court noted that the PLRRA pre-empted certain state
laws with the goal of encouraging the formation of RRGs due to the
lack of product liability insurance at affordable rates, thereby
permitting RRGs to do business in every state after fully complying
with the insurance laws of the jurisdiction in which they were
chartered. Greenfield, 24 F.Supp.2d at 1098. The court further
commented that in enacting the LRRA, Congress intended to preclude
most state regulation of RRGs. Id.

Oregon law required that "authorized insurers" permitted to
sell insurance in the state be a member in an insurance insolvency
association. Since RRGs were prohibited under Oregon law from
becoming a member of such an association, they were effectively
prevented from achieving "authorized insurer" status. Id. at 1100.
Oregon law further provided that an automobile dealer with a net
worth of less than $100 million was required to purchase its
reimbursement insurance policies from an "authorized insurer." The
court concluded that the Oregon provisions were pre-empted because
they prohibited foreign RRGs from operating in Oregon and
discriminated against RRGs in violation of federal law. Id. at
1101.

The court further found that the LRRA created a right in the
plaintiff enforceable under §1983. Id. at 1110. The court noted
that the LRRA created a sufficiently specific and definite

9

obligation on the part of the state not to discriminate against or regulate the operation of the RRGs in certain specific ways, and that this obligation was within the competence of the judiciary to enforce and was intended to benefit the RRG. Id. The court further found the LRRA contained no comprehensive remedial scheme indicating any intent by Congress to foreclose §1983 as a remedy. Id. The court concluded that the plaintiff was entitled to an award of attorney's fees under §1988.

The plaintiffs in the present case argued that Ohio Revised Code §§3953.21(B), 3905.02(B), 3905.03(A)(5), 3905.04, and 3905.18(C) and (D) were pre-empted under §92. In Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25 (1996), the Supreme Court held that §92 pre-empted a Florida statute which prohibited national banks from selling most types of insurance. The Court pointed to the language of §92, which grants national banks the authority to sell insurance in small towns in "addition to the powers now vested by law" in national banks. (Emphasis supplied). Barnett Bank, 517 U.S. at 32. The Court further stated that the fact that §92 states that national banks "may" act as insurance agents did not mean that Congress intended to "condition federal permission upon that of the State." Id. at 35. See also Owensboro National Bank v. Stephens, 44 F.3d 388, 391 (6th Cir. 1994)("Providing that a bank "may act" is no different than providing that a bank "shall have the power to act." (Emphasis in original)). The Court in Barnett Bank concluded "that [§92] means to grant small town national banks authority to sell insurance,

15

whether or not a State grants its own state banks or national banks similar approval." Barnett Bank, 517 U.S. at 37.

In Owensboro National Bank, the court noted that the chief object of §92 was to increase the number of banks serving small towns by creating additional sources of revenue for such banks. 44 F.3d at 391. This supports the argument that §92 was intended to confer a right or benefit upon the national banks.

In New York Bankers Ass'n, Inc. v. Levin, 999 F.Supp. 716, 719 (W.D.N.Y. 1998), the court referred to the national banks' "exercise of their powers under federal law" and held that the New York statute "significantly interferes with the plaintiffs' federally conferred right to sell insurance products to its loan customers." (Emphasis supplied). In Deposit Guarantee National Bank v. Dale, 28 F.Supp.2d 395, 401 (S.D.Miss. 1998), the court enjoined enforcement of a Mississippi law "which interferes with a national bank's right to sell insurance as permitted by Title 12 U.S.C. §92." (Emphasis supplied).

This court concludes that the purpose of §92 was to specifically benefit national banks, as opposed to merely protecting some general federal interest, and that §92 grants to national banks a right or power to sell insurance. That section also imposes a binding and mandatory obligation on the states not to "forbid, or to impair significantly, the exercise of a power that Congress explicitly granted" under §92. Barnett Bank, 517 U.S. at 33. This court also finds that the obligations and rights created by §92 are sufficiently specific and definite to permit

11

competent judicial enforcement. Finally, §92 does not contain a comprehensive enforcement scheme which would indicate an intent on the part of Congress to preclude a cause of action under §1983. Plaintiffs' pre-emption argument under §92 is based on substantive rights contained in that statute which are enforceable under §1983, and which may serve as the basis for attorney's fees under §1988.

The plaintiffs also argued that Ohio Revised Code §§3905.02(E)(1) and (2) and 3905.18(G)(1) and (2) were pre-empted by federal law. In support of this argument, the plaintiffs referred to 12 U.S.C. §26, which grants exclusive authority to the Comptroller of the Currency to determine whether a corporation or association is lawfully entitled to commence the business of banking. These Ohio provisions condition the selling of insurance within the state on compliance with the foreign corporation licensing requirements of Title XVII of the Ohio Revised Code and upon maintaining good standing with the Ohio secretary of state.

Ohio Revised Code §§3905.02(E)(1) and (2) and 3905.18(G)(1) and (2) concern the authority to determine whether a corporation will be a good corporate citizen which should be permitted to do business within the state. This court held in its decision on the plaintiffs' motion for summary judgment, p. 28, that those provisions are pre-empted by 12 U.S.C. §26 because they conflict with the authority of the Comptroller to determine the qualifications of a corporation seeking to become a national bank. As noted in Bank of America, National Trust & Savings Ass'n v. Lima, 103 F.Supp. 916, 917-18 (D.Mass. 1952), the national bank's

12

"presence in the state is attributable to the national power, not to the state's permission."

However, the plaintiff national banks have no rights under §26 to determine their own fitness to do business, nor do they have the right to establish the rules and regulations by which they will be governed.  Rather, the right or authority to decide whether an entity is fit and qualified to do business as a national bank rests with the Comptroller of the Currency under §26.  Therefore, the plaintiffs cannot look to §26 as the source of any right enforceable under §1983.

Nonetheless, pre-emption of these Ohio provisions does not rest solely on §26.  State law may also be pre-empted where the state law "prevent[s] or significantly interfere[s] with the national bank's exercise of its powers." Barnett Bank, 517 U.S. at 33.  Under §92, duly chartered national banks have the right to sell insurance if they comply with the regulations of the Comptroller.  However, §§3905.02(E)(1) and (2) and 3905.18(G)(1) and (2) also mandate that they satisfy the requirements of Title XVII and maintain good standing with the secretary of state as a foreign corporation.

Title XVII includes Ohio Revised Code §1703.15, which provides that a foreign corporation may not transact business in Ohio which could not be lawfully transacted by a domestic corporation.  In the event that the secretary of state determines that a foreign corporation is transacting business in the state that a domestic corporation could not lawfully transact, the secretary is required

13

to cancel the license of the foreign corporation to transact business in the state. §1703.15.

Under Ohio Revised Code §3953.21(B), no bank, including a bank incorporated within Ohio, is permitted to act as an agent for a title insurance company. In addition, the principal purpose test in Ohio Revised Code §§3905.02(B), 3905.03(A)(5), 3905.04, and 3905.18(C) and (D) would effectively preclude many Ohio banks from selling other types of insurance. Since §92 gives national banks the right to transact business, i.e., sell insurance, which similarly situated domestic banks could not lawfully transact, §1703.15, and, by extension, §§3905.02(E)(1) and (2) and 3905.18(G)(1) and (2), operate to infringe upon a right afforded national banks under §92.

These obligations and rights created by §92 are sufficiently specific and definite to permit competent judicial enforcement, and §92 does not contain a comprehensive enforcement scheme which would indicate an intent on the part of Congress to preclude a cause of action under §1983 on this ground. Plaintiffs' pre-emption argument relating to §§3905.02(E)(1) and (2) and 3905.18(G)(1) and (2) is based on substantive rights contained in that statute which are enforceable under §1983, and which may serve as the basis for attorney's fees under §1988.

Defendant Duryee also contends that an award of fees under §1988 is inappropriate because this court did not specifically resolve the §1983 claims in its order of June 18, 1999, but rather based its ruling on federal pre-emption under the Supremacy Clause.

14

However, the fact that a party prevails on a ground other than §1983 does not preclude an award of attorney's fees under §1988. Haley v. Pataki, 106 F.3d 478, 481 (2d Cir. 1997). This is true even if the plaintiff does not specifically mention §1983 in the complaint. Americans United For Separation of Church and State v. School Dist. of City of Grand Rapids, 835 F.2d 627, 631 (6th Cir. 1987). Rather,

> §1988 is concerned with the substance of a prevailing party's action. rather than the form in which it is presented. The mere failure to plead or argue reliance on §1983 is not fatal to a claim for attorney's fees if the pleadings and evidence do present a substantial ... claim for which §1983 provides a remedy, and this claim is related to the plaintiffs' ultimate success.

Id. Thus, in Americans United, the court concluded that the fact that the plaintiffs chose to seek relief under the Declaratory Judgment Act rather than §1983 did not preclude an award of attorney's fees under §1988 where the plaintiffs asserted a claim that their constitutional rights were infringed by the defendants. See also Haley, 106 F.3d at 481-482 (attorney's fees available under §1988 even though plaintiffs did not specifically refer to §1983 where the plaintiff's Contract Clause claim presented a substantial §1983 claim).

Here, the plaintiffs specifically asserted claims under §1983 in their complaint, in addition to requesting declaratory relief under 28 U.S.C. §2201. The fact that this court granted declaratory relief under §2201 without expressly discussing the plaintiffs' claims in the context of §1983, or the fact that this court could also grant the injunctive relief requested by the

15

plaintiffs under the general federal question jurisdiction provided in 28 U.S.C. §1331, see Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983), does not preclude the plaintiffs from now seeking an award of attorney's fees under §1988. See Maher v. Gagne, 448 U.S. 122, 129 (1980) ("Nothing in the language of §1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.")

In order to prevail on a claim under §1983, the plaintiffs must prove two elements: first, that they have been deprived of a right secured by the Constitution or laws of the United States, and second, that the deprivation was conducted under the color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The record in this case establishes that there is no dispute that state action was involved. The record further established that the state statutes in question, which defendant Duryee gave every indication that he would enforce, deprived the plaintiffs of rights guaranteed under §92. While defendant Duryee argues that the plaintiffs have failed to establish that their rights were violated because they have yet to apply to become insurance agents, the record on summary judgment shows that such an application would have been futile because the plaintiffs were unable to certify that they could satisfy the principal purpose test under Ohio law. The record demonstrates that the plaintiffs asserted a substantial §1983 claim.

Defendant Duryee argues that the plaintiffs should not be

allowed to recover attorney's fees because they are financially able to pay for their counsel's services. However, the financial ability of a §1983 plaintiff to obtain legal representation is not a factor to be considered in determining whether to award fees. See Hastert v. Illinois State Bd. of Election Com'rs, 28 F.3d 1430, 1443 (7th Cir. 1993)("[T]he Supreme Court has consistently held that a plaintiff's ability to pay for legal representation is not a special circumstance justifying the denial of attorneys' fees.")(citing Venecas v. Mitchell, 495 U.S. 82 (1990) and Blanchard v. Bergeron, 489 U.S. 87 (1989)); Herrington v. County of Sonoma, 883 F.2d 739, 743 (9th Cir. 1989).

In conclusion, the court finds that the plaintiffs are entitled to an award of attorney's fees under §1988 against defendant Duryee in his official capacity, and their motion for attorney's fees and costs is granted. The motion for attorney's fees insofar as it applies to the intervenor defendants is denied without prejudice. The court notes that defendant Duryee has not indicated whether he contests the amount of attorney's fees claimed by the plaintiffs. If the defendant wishes to assert any objections to the amount or reasonableness of the fees claimed, such objections should be raised in a memorandum filed on or before February 22, 2000. The court will then issue an order establishing the amount of fees due to the plaintiffs.

17

It is so ordered.


James L. Graham
United States District Judge

Date: February 9, 2000

18