## CASE NO. 10-4115/10-4116

## IN THE UNITED STATES COURT OF APPEALS
## FOR
## THE SIXTH CIRCUIT

### CHASE BANK, USA, et al.
*Plaintiffs-Appellants*

### v.

### CITY OF CLEVELAND
*Defendant –Appellee*

Appeal from the United States District Court for the
Northern District of Ohio, Eastern Division
No. 08-00514

### APPELLANTS/CROSS-APPELLEES' RESPONSE AND REPLY BRIEF

Isaac Schulz (0021009)
Michael N. Ungar (0016989)
Richik Sarkar (0069993)
Isaac J. Eddington (0072966)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
216-583-7000 / Fax: 216-583-7001
ischulz@ulmer.com
mungar@ulmer.com
rsarkar@ulmer.com
ieddington@ulmer.com
*Counsel for Appellants Chase Bank USA,*
*N.A, JPMorgan Chase Bank, N.A.,*
*JPMorgan Mortgage Acquisition Corp., and*
*J.P. Morgan Securities Inc.*

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES ..................................................................1

SUMMARY OF ARGUMENT ...........................................................1

STANDARD OF REVIEW ...............................................................4

ARGUMENT ......................................................................................5

I.    THE CHASE ENTITIES' PREEMPTION ACTION IS GROUNDED
      IN TWO SOURCES—THE SUPREMACY CLAUSE AND 42
      U.S.C. §1983................................................................................5

      A.    The District Court's Statutory Basis For Jurisdiction On The
            Supremacy Clause Is 28 U.S.C. §1331 And On The §1983
            Claim The Applicable Jurisdictional Statute Is 28 U.S.C.
            §1343(a)(3). .........................................................................5

      B.    The U.S. Supreme Court And This Court Have Held That
            Federal  Question Jurisdiction Exists Over Declaratory And
            Injunctive Claims Based On Federal Preemption. ...............6

      C.    The National Bank Act Creates Rights Enforceable Under 42
            U.S.C. §1983. .....................................................................13

II.   THE CHASE ENTITIES' PREEMPTION ACTION CANNOT BE
      DISMISSED ON THE ALTERNATE GROUNDS RAISED FOR
      THE FIRST TIME ON APPEAL................................................17

      A.    The Preemption Action Is Not Subject To Discretionary
            Dismissal. ...........................................................................19

      B.    The Chase Entities' Preemption Action Does Not Qualify For
            Abstention Under *Younger v. Harris*. ...............................25

      C.    The Anti-Injunction Act Does Not Apply To The Chase
            Entities' Preemption Action. ..............................................27

III.  CLEVELAND'S CROSS-APPEAL SHOULD BE REJECTED
      BECAUSE THE DISTRICT COURT CORRECTLY FOUND

JURISDICTION OVER THE CHASE ENTITIES' REQUEST FOR
AN INJUNCTION ........................................................................................33

CONCLUSION .................................................................................................36

CERTIFICATE OF COMPLIANCE....................................................................38

CERTIFICATE OF SERVICE ..........................................................................39

ADDENDUM  (UNPUBLISHED CITED AUTHORITY) ....................................40

# <u>TABLE OF AUTHORITIES</u>

## Cases

*Adrian Energy Associates v. Michigan Pub. Serv. Comm'n*,
    481 F.3d 414 (6th Cir. 2007)................................................................. 8, 11, 12, 19

*Am. Fin. Servs. Ass'n v. City of Cleveland*,
    112 Ohio St. 3d 170 (2006)............................................................................ 26, 34

*Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*,
    408 F.3d 248 (5th Cir. 2005)....................................................................................20

*Ammex, Inc. v. Cox*,
    351 F.3d 697 (6th Cir. 2003)......................................... 7, 8, 9, 11, 12, 33, 34, 36

*AmSouth v. Dale*,
    386 F.3d 763 (6th Cir. 2004)............................................................................ 11, 12

*Ass'n of Banks in Ins., Inc. v. Duryee*,
    270 F.3d 397 (6th Cir. 2001)................................................................. 14, 15, 17

*Ass'n of Banks in Insurance v. Duryee*,
    C2-98-1120 (S.D. Ohio Feb. 9, 2000) .................................................................14

*Bank of America v. City and County of San Francisco*,
    309 F.3d 551 (9th Cir. 2002).................................................................................16

*Bank of America v. McCann* (N.D. Fla. 2006),
    444 F. Supp. 2d 1227 .............................................................................................30

*Bank One, Utah, N.A. v. Guttau*,
    190 F.3d 844 (8th Cir. 1999)..................................................................................18

*Brillhart v. Excess Ins. Co. of America*,
    316 U.S. 491 (1942)........................................................................... 20, 21, 24

*Carras v. Williams*,
    807 F.2d 1286 (6th Cir. 1986) ...............................................................................25

*Cedar Rapids Cellular Tel. L.P. v. Miller,*
 280 F.3d 874 (8th Cir. 2002)...........................................................................9, 20

*CHRP v. Deutsche Bank Trust Co.,*
 621 F.3d 554 (6th Cir. 2010)...................................................................................27

*Cleveland v. Ameriquest Mortgage Securities, Inc.,*
 615 F.3d 496 (6th Cir. 2010)...............................................................................2, 23

*Cleveland v. Ameriquest Mortgage Securities, Inc.,*
 621 F. Supp. 2d 513 (N.D. Ohio 2009).............................................2, 23, 25, 34

*Davis International, LLC v. New Start Group Corp.,*
 488 F.3d 597 (3d Cir. 2007)....................................................................................31

*First National Bank v. Marquette National Bank,*
 636 F.2d 195 (8th Cir. 1980)...................................................................................17

*Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust,*
 463 U.S. 1 (1983)...................................................................................................9, 10

*Franklin National Bank v. New York,*
 347 U.S. 373 (1954)...................................................................................................13

*Frith v. Blazon-Flexible Flyer, Inc.,*
 512 F.2d 899 (5th Cir. 1975)...................................................................................30

*Golden State Transit Corp. v. City of Los Angeles,*
 493 U.S. 103 (1989)...........................................................................................16, 17

*Heydon v. MediaOne,*
 327 F.3d 466 (6th Cir. 2003)...................................................................................10

*Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs.,*
 603 F.3d 365 (7th Cir. 2010).....................................................................................9

*Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.,*
 77 F.3d 1063 (8th Cir. 1996)...................................................................................31

*Lyons v. Stovall,*
 188 F.3d 327 (6th Cir. 1999)...................................................................................22

*Marel v. LKS Acquisitions, Inc.*,
    585 F.3d 279 (6th Cir. 2009) ................................................................10

*Med-Trans. Corp. v. Benton*,
    581 F. Supp. 2d 721 (E.D.N.C. 2008) ..................................................18

*Michigan S&L League v. Francis*,
    683 F.3d 957 (6th Cir. 1982) ................................................................12

*Michigan S.R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n*,
    287 F.3d 568 (6th Cir. 2002) ................................................................10

*Mikulski v. Centerior Energy Corp.*,
    501 F.3d 555 (6th Cir. 2007) ................................................................10

*Mitchum v. Foster*,
    407 U.S. 225 (1972) ................................................................ 28, 29, 30

*Morales v. TWA*,
    504 U.S. 374 (1992) ................................................................ 18, 35, 37

*Myers v. Hertz Penske Truck Leasing, Inc.*,
    572 F. Supp. 500 (N.D. Ga. 1983) .......................................................32

*Pennzoil Co. v. Texaco, Inc.*,
    418 U.S. 11 (1987) ................................................................................26

*Penobscot Nation and Passamaquoddy Tribe v. Georgia Pacific Corporation*,
    106 F. Supp. 2d 81 (D. Me. 2000) .......................................................10

*Phillip Morris Inc. v. Harsbarger*,
    946 F. Supp. 1067 (D. Mass. 1996) .....................................................35

*Playboy Enters. v. Pub. Serv. Comm'n of Puerto Rico*,
    906 F.2d 25 (1st Cir. 1990) ..................................................................11

*Public Service Commission of Utah v. Wycoff Co.*,
    344 U.S. 237 (1952) ........................................................................ 11, 12

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008) ........................................................................ 34, 35

*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,*
    359 U.S. 236 (1959) ..............................................................................34

*SFM Holdings LTD. v. Fisher,*
    No. 08-81177, 2009 U.S. Dist. LEXIS 71953 (S.D. Fla. 2009) ..........................31

*Shaw v. Delta Airlines,*
    463 U.S. 85 (1983) ......................................................... 1, 6, 7, 8, 9, 10, 11, 12, 33

*United States of America v. Kentucky,*
    252 F.3d 816 (6th Cir. 2001) ........................................................... 4, 20

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.,*
    535 U.S. 635 (2002) ........................................................... 1, 7, 8, 9, 12

*Wachovia Bank v. Burke,*
    414 F.3d 305 (2d Cir. 2005) ......................................................... 15, 16

*Westfield v. Welch's,*
    170 F.3d 116 (2d Cir. 1999) ..............................................................20

*Wilder v. Virginia Hospital Association,*
    496 U.S. 498 (1990) ..................................................................... 16, 17

*Wilton v. Seven Falls Company,*
    515 U.S. 277 (1995) .............................................................. 20, 21, 24

*Younger v. Harris,*
    401 U.S. 37 (1971) .......................................................... 19, 25, 26, 27

## Statutes

12 U.S.C. §24 ........................................................................ 13, 17, 29

12 U.S.C. §371 ..............................................................................13

12 U.S.C. §484 ..................................................................... 13, 17, 29

12 U.S.C. §85 ................................................................................13

12 U.S.C. §92 ......................................................................... 14, 15

28 U.S.C. §1331 .............................................................. 5, 6, 7, 36, 37

28 U.S.C. §1343(a)(3) ............................................................... 5, 37

28 U.S.C. §2283 ...................................................................... 19, 27

42 U.S.C. §1983 ................................... 5, 6, 13, 14, 15, 16, 17, 28, 33, 36

Ohio R.C. §1.63 ...................................................................... 25, 27

## STATEMENT OF ISSUES

1.      Do *Shaw v. Delta Airlines,* 463 U.S. 85 (1983), *Verizon Md. Inc. v. Public Serv. Comm'n of Md.,* 535 U.S. 635 (2002) and 6th Circuit precedent require reversal of the U.S. District Court for the Northern District of Ohio's (the "District Court's") dismissal for lack of a federal question of the Chase Entities'[1] claim for a declaratory judgment that a threatened state lawsuit by Cleveland cannot be brought because it is preempted by federal bank law?

2.      Do the above authorities also require reversal of the District Court's decision not to grant the Chase Entities injunctive relief (for lack of irreparable harm) against a threatened state lawsuit by Cleveland that is preempted by federal bank law?

## SUMMARY OF ARGUMENT

According to Appellee/Cross-Appellant the City of Cleveland ("Cleveland"), banks that securitize mortgage loans after other lenders make such loans are exposed to liability, among other things, for the lost property taxes and police and protection expenses that cities incur when borrowers default.  Cleveland claims that the securitization of sub-prime housing loans by mostly non-lender financial institutions creates a public nuisance - sometimes.  "Sometimes"---

---

[1] The "Chase Entities," as used herein, include JPMorgan Chase Bank, N.A., Chase Bank U.S.A., N.A., JPMorgan Mortgage Acquisition Corp, and J.P. Morgan Securities, Inc., who are the Appellants in this case.

because according to Cleveland not all cities or areas of the country are affected by sub-prime mortgage securitization, only those cities that are economically distressed and have ongoing unemployment, poverty, dilapidated housing, crime, and other problems. Cleveland identifies itself as one of those cities. It maintains that the defendant financial institutions are liable for creating a public nuisance in Cleveland because they should have known that Cleveland was a distressed city and they should have foreseen that the securitization of loans (1) would cause numerous sub-prime loans to be made by lender banks to Cleveland's borrowers, (2) which would create numerous defaults, (3) which in turn would cause foreclosures, and (4) which would ultimately result in economic losses to the City. Cleveland has asked the courts to decide under what circumstances such liability arises, and in which cities, and on which loans, with no standard to guide the courts apart from the common law of public nuisance. Both the District Court and this Court have rejected this nuisance claim on causation grounds. *See Cleveland v. Ameriquest Mortgage Securities, Inc.,* 621 F. Supp. 2d 513 (N.D. Ohio 2009); *Cleveland v. Ameriquest Mortgage Securities, Inc.,* 615 F.3d 496 (6th Cir. 2010) (respectively).

Cleveland desperately seeks a different answer, however, and hopes it will get one in state court. Cleveland's state court action (Cuyahoga Common

Pleas Case No. #08-668608 or "the State Action")[2] must therefore be enjoined, since if a state court can approve Cleveland's securitizing-loans-is-a-nuisance claim, then it will be regulating the lending and securitization activities of national banks, which the National Bank Act and accompanying regulations forbid the states from doing.    Unquestionably the Chase plaintiffs can raise federal preemption as a defense in the State Action, but Supreme Court and Sixth Circuit law makes clear that when a state threatens to take action that is preempted by federal law, federal courts can directly block that action through declaratory and injunctive relief.  This is especially true in this case, where the Chase Entities filed their action seeking a declaration of preemption and an injunction **before** Cleveland filed the State Action.[3]

The District Court therefore erred when it dismissed the Chase Entities' declaratory judgment claim for lack of jurisdiction, and likewise erred when it dismissed the Chase Entities' request for an injunction for failure to show irreparable harm.  Cleveland does not even attempt to defend the latter holding,

---

[2] Cleveland attached its State Court Action Complaint as an Addendum (A-1 through A-35) to its Principal and Response Brief ("Cleveland's Brief") filed with this Court on January 3, 2011.

[3] Cleveland's nuisance claim was removed to federal court shortly after it was filed, in January of 2008.  *See* Northern District of Ohio Case No. 1:08CV139 ("Federal Action").  On February 28 of that year, this Preemption Action (Northern District of Ohio Case No. 1:08CV514) was filed, to prevent other efforts by Cleveland to regulate preempted national banking activity.  R.E. #1.  Months later, in August of 2008, Cleveland filed the State Action as part of its persistent attempts to evade the federal courts (detailed further on page 23-24 of this brief.)

offering instead (for the first time) a catalogue of alternative reasons for dismissal (discretionary dismissal, *Younger* abstention, and the Anti-Injunction Act). These grounds, however, no more justify the dismissal of the Chase Entities' Preemption Action than did the grounds given by the District Court, and this Court should accordingly reverse that dismissal.

## **STANDARD OF REVIEW**

Cleveland concedes that a dismissal for lack of subject-matter jurisdiction is reviewed *de novo*, but argues that dismissal of, or abstention from, a declaratory judgment action is reviewed for abuse of discretion.[4] However, this Court has held that "there is little practical distinction between review for abuse of discretion and review *de novo* in abstention cases, ***inasmuch as the district court's decision to abstain is narrowed by a federal court's obligation to exercise its jurisdiction in all but the most extraordinary cases***." *United States of America v. Kentucky,* 252 F.3d 816, 825 (6th Cir. 2001) (emphasis added).

Moreover, the District Court did not in fact abstain from, or dismiss, the suit below under whatever discretion is afforded by the Declaratory Judgment Act, but dismissed it for lack of subject matter jurisdiction (which Cleveland concedes is reviewed *de novo*), and for failure to show "irreparable harm," (a position Cleveland does not even try to defend). Thus, in asking this Court to defer

---

[4] *See* Cleveland's Brief at 19.

to a discretionary dismissal or abstention under the Declaratory Judgment Act, Cleveland asks for deference to a District Court decision that was never made.

For the foregoing reasons, this Court should review, *de novo*, all aspects of the District Court's decision.

## **ARGUMENT**

### I. **THE CHASE ENTITIES' PREEMPTION ACTION IS GROUNDED IN TWO SOURCES—THE SUPREMACY CLAUSE AND 42 U.S.C. §1983.**

#### A. **The District Court's Statutory Basis For Jurisdiction On The Supremacy Clause Is 28 U.S.C. §1331 And On The §1983 Claim The Applicable Jurisdictional Statute Is 28 U.S.C. §1343(a)(3).**

Cleveland's State Action is preempted by the National Bank Act and its implementing regulations. This claim rests on the alternate grounds of the U.S. Constitution's Supremacy Clause and 42 U.S.C. §1983. The District Court had general 'federal question' jurisdiction over the Supremacy Clause claim pursuant to 28 U.S.C. §1331, and 28 U.S.C. §1343(a)(3) specifically grants jurisdiction over §1983 claims.

Although the Chase Entities' jurisdiction argument is unambiguous, Cleveland seems to have misunderstood it. Cleveland expends much type contending that the Supremacy Clause does not create rights under 28 U.S.C. §1343(a)(3); however, the Chase Entities have never said otherwise.[5] That statute

---

[5] *See* Cleveland's Brief at 20-21.

grants jurisdiction over §1983 claims, but the Chase Entities' Supremacy Clause claim rests on federal question jurisdiction pursuant to 28 U.S.C. §1331.

Cleveland also inveighs against another straw man—that "a claim premised on a violation of the Supremacy Clause through preemption is not cognizable under §1983."[6]  Again, no argument:  as shall be further explained below, the Chase Entities' §1983 claim is not based on the Supremacy Clause, but on the National Bank Act.  The Supremacy Clause claim needs no statutory basis (apart from 28 U.S.C. §1331) for federal question jurisdiction. Federal courts have repeatedly held—in cases which Cleveland does not contest or even mention—that the Supremacy Clause grants a direct right of action when federal statutes are preempted.[7]

**B.    <u>The U.S. Supreme Court And This Court Have Held That Federal Question Jurisdiction Exists Over Declaratory And Injunctive Claims Based On Federal Preemption.</u>**

Despite contrary holdings of the U.S. Supreme Court and of this Court, Cleveland maintains that there is no federal jurisdiction over preemption-based suits for declaratory and injunctive relief.  Not so:  since the U.S. Supreme Court's 1984 decision in *Shaw v. Delta Airlines,* in which "companies subject to ERISA regulation … [sought] injunctions against enforcement of state laws they

---

[6] *See* Cleveland's Brief at p. 22.
[7] *See* the Chase Entities' Nov. 17, 2010 Brief of Appellants ("First Chase Brief") at 17-19, and cases cited therein.

claim *are* preempted by ERISA, ***as well as declarations that those laws are pre-empted***," it has been the law that a "plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, ***thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. §1331 to resolve.***"  463 U.S. 85, 96 n.14 (1983)(emphasis added).

The U.S. Supreme Court has since confirmed *Shaw,* holding that "[w]e have no doubt that the federal courts have jurisdiction under [28 U.S.C.] §1331 to entertain" a plaintiff's suit for "***a declaratory judgment that the [Maryland Public Service] Commission's order was unlawful***, and an injunction prohibiting its enforcement." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002) (emphasis added).

The *Shaw-Verizon* doctrine is the law of the land, and also the law of this Circuit.  In *Ammex, Inc. v. Cox*—which the District Court conceded was an "analogous situation" to this case[8]—this Court held that "[t]he Supreme Court's decision in *Shaw v. Delta Air Lines, Inc.* makes clear that a federal court has subject matter jurisdiction when a person seeks to enjoin state officials from enforcing a state regulation against the person on the ground that the regulation violates federal rights." *Ammex, Inc. v. Cox*, 351 F.3d 697, 702 (6th Cir. 2003).

---

[8] *See* District Court's Aug. 5, 2010 Memorandum Opinion, R.E. #38 (the "District Court Opinion") at 14.

The *Ammex* Court held that federal jurisdiction existed, because the plaintiff had asked for both a declaration and an injunction, as opposed to "merely declaratory relief." *Id.* at 703, n.4. In *Adrian Energy Associates v. Michigan Pub. Serv. Comm'n,* this Court likewise held, relying on *Shaw,* that the federal courts have jurisdiction over preemption-based suits for declaratory and injunctive relief. 481 F.3d 414 at 416, 420 (6th Cir. 2007).

The District Court conceded that these cases required it to find jurisdiction over the Chase Entities' request for an injunction, but not over the accompanying request for a declaratory judgment.[9] The governing cases do not recognize any such distinction: all of them (*Shaw, Verizon, Ammex,* and *Adrian*) involved suits for *both* declaratory and injunctive relief, and in none of these cases did the U.S. Supreme Court or this Court dismiss the declaratory judgment suit.

Drawing a jurisdictional line between the preemption-based claims for declaratory and injunctive relief in a single lawsuit is therefore not good law; it also makes little sense. A federal court cannot enjoin a state court suit without declaring, in essence, that the suit should not go forward, and the dismissal of a declaratory judgment action has little meaning if the plaintiff can still seek an injunction.[10]

---

[9] *See* District Court Opinion at 11, 14-15.

[10] Cleveland, interestingly, has not tried to defend the District Court's distinction between declaratory and injunctive relief, but has instead cross-appealed on the

      **Hence, the best rule is that which the courts, including this Court, actually follow:  that the federal courts have jurisdiction to hear preemption-based claims for declaratory relief when those claims include a request for an injunction.**  *See Cedar Rapids Cellular Tel. L.P. v. Miller,* 280 F.3d 874, 878 (8th Cir. 2002) (reversing a trial court's ruling that "preemption claims cannot support federal jurisdiction because they are in the nature of federal defenses," because although this reasoning "might have had force if the appellants were only seeking a declaratory judgment … ***because …[they] are also seeking injunctive relief on their preemption claims, the district court has jurisdiction to hear them.***") (emphasis added); *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs.,* 603 F.3d 365, 369-371 (7th Cir. 2010) (holding, in suit seeking declaratory and injunctive relief against state officials, that Supreme Court case law "authorizes this suit against state officials seeking prospective relief.")

      Cleveland cannot circumvent the *Shaw-Verizon-Ammex* rule, and the cases it cites in opposing that rule are not relevant.  For example, Cleveland cites *Franchise Tax Board v. Construction Laborers Vacation Trust,*[11] a U.S. Supreme

---

District Court's dismissal without prejudice of the Chase Entities' request for injunction, arguing that this dismissal should have been with prejudice as well.  *See* Cleveland's Brief at 37-40.

[11] *See Franchise Tax Bd. of California v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983), cited in Cleveland's Brief at 25.

Court case released on the same day as *Shaw,* but does not point out what the *Shaw*

Court considered as the crucial difference between the two cases:

> *Franchise Tax Board* was an action seeking a declaration
> that state laws were *not* pre-empted by ERISA. Here, [in
> *Shaw*], in contrast, companies subject to ERISA
> regulation seek injunctions against enforcement of state
> laws they claim *are* pre-empted by ERISA, as well as
> declarations that those laws are pre-empted.

*Shaw,* 463 U.S. 85, 96 n.14 (emphasis in original.)  Thus, *Franchise Tax* governs

requests for declarations that state law *is not* preempted by federal law, but *Shaw*

governs suits (like the Chase Entities' suit here) which ask for declarations that a

state law *is* preempted, and for orders enjoining that law from being enforced.  The

federal courts accordingly have jurisdiction over such suits.

Cleveland also cites a number of cases between private parties,[12] but

the *Shaw* doctrine only applies to those preemption suits (like that of the Chase

Entities here) brought against state or local governments to enjoin the enforcement

of state law.  *See Penobscot Nation and Passamaquoddy Tribe v. Georgia Pacific*

*Corporation,* 106 F. Supp. 2d 81, 83 n.4 (D. Me. 2000) (stating that although there

was no jurisdiction over a request to enjoin private parties for federal preemption

---

[12] *See* Cleveland's Brief at 24-26, citing the following cases which, because they involve suits between private parties, are not relevant:  *Marel v. LKS Acquisitions, Inc.*, 585 F.3d 279 (6th Cir. 2009); *Michigan S.R.R. Co. v. Branch & St. Joseph Ctys. Rail Users Ass'n,* 287 F.3d 568 (6th Cir. 2002); *Heydon v. MediaOne,* 327 F.3d 466 (6th Cir. 2003); *Mikulski v. Centerior Energy Corp.,* 501 F.3d 555 (6th Cir. 2007).

reasons, "if the … [plaintiffs] were *seeking to enjoin state officials, federal jurisdiction would exist.*") (emphasis added).    Indeed, the District Court recognized that suits between private parties were not relevant to this case. *See* District Court Opinion at 13 (and cases cited at fn. 6 of that page).

Cleveland likewise misses the mark when it invokes the principle that a declaratory action cannot create federal jurisdiction over a federal defense to a state-law claim,[13] as this principle does not apply to cases governed by *Shaw.  See Playboy Enters. v. Pub. Serv. Comm'n of Puerto Rico,* 906 F.2d 25, 29-30 (1st Cir. 1990) (recognizing the "general principle that in a suit for declaratory judgment, federal question jurisdiction cannot be based solely on the raising of a federal defense to a state law cause of action," but holding that *Shaw,* which authorizes preemptive suits for declaratory and injunctive relief against state officials, is a "limitation" on that general principle).  Indeed, if this principle were not limited by the *Shaw* doctrine, then *Shaw* and its progeny, including this Court's *Ammex* and *Adrian* decisions, would be eviscerated.

Finally, Cleveland cites dicta from the U.S. Supreme Court's decision in *Public Service Commission of Utah v. Wycoff Co*., 344 U.S. 237 (1952), and from this Court's decision in *AmSouth v. Dale*, 386 F.3d 763 (6th Cir. 2004).[14] The *Wycoff* Court questioned whether the federal courts had jurisdiction when a

---

[13] *See* Cleveland's Brief at 24-25.
[14] *See* Cleveland's Brief at 25.

"declaratory complaint sets forth a claim of federal right, if that right is in reality in the nature of a defense to a threatened cause of action." *Wycoff*, 244 U.S. at 248. However, the suit in *Wycoff* would have been dismissed anyway (as both unripe and not stating a claim under the Declaratory Judgment Act), and the U.S. Supreme Court's *Shaw* and *Verizon* precedents were established well after *Wycoff* was decided. Indeed, this Court, in *Ammex,* noted the "doubtful continued significance" of the *Wycoff* dicta. *Ammex v. Cox,* 351 F.3d at 703 n.4.[15]

This Court's statement in *AmSouth v. Dale*, 386 F.3d 763 (6th Cir. 2004) that it would not have federal question jurisdiction over a declaratory preemption action, *see id.* at 775,  is likewise dicta, as the *AmSouth* Court found diversity jurisdiction before deciding upon a discretionary dismissal of the declaratory judgment action, *see id.* at 780 (holding  that because the case was "an inappropriate declaratory action [under the Declaratory Judgment Act]… we hold subject matter jurisdiction exists and exercise it for the limited purpose" of dismissal).  Moreover, since the *AmSouth* Court never mentioned *Shaw* or *Verizon,* or even this Court's prior decision in *Ammex,* the *AmSouth* dicta cannot be read as a repudiation of these governing cases.  Indeed, this Court's subsequent decision in *Adrian* confirms that the *Shaw* doctrine is still followed in this Circuit.

---

[15] Cleveland's citation (on page 26 of its Brief) of this Court's decision in *Michigan S&L League v. Francis,* 683 F.3d 957 (6th Cir. 1982)—which relied on *Wycoff*—is inapposite, since *Francis* was decided prior to *Shaw, Verizon, Ammex,* and *Adrian.*

12

In short, when a suit seeks both a declaration that a state law or regulation is preempted by federal law, and an order enjoining the enforcement of that law, the federal courts have jurisdiction to hear the suit. A contrary decision would ignore governing case law from the Supreme Court and from this Court, as well as the widely shared holdings of the other Courts of Appeals. Thus, the District Court had subject matter jurisdiction over the Chase Entities' request for declaratory judgment, and its dismissal of that request should be reversed.

### C.    The National Bank Act Creates Rights Enforceable Under 42 U.S.C. §1983.

While the Chase Entities have a cause of action under the Supremacy Clause, they also have a claim under 42 U.S.C. §1983 to protect their rights under the National Bank Act.  This Act gives national banks the right to "carry on the business of banking" without state interference or control.  *See* 12 U.S.C. §24 (Seventh); *see also* 12 U.S.C. §§85, 371, and 484.    **Indeed, the U.S. Supreme Court has characterized the powers given by federal law to national banks— to be exercised free of state interference—as rights**.  *See Franklin National Bank v. New York,* 347 U.S. 373, 377-378 (1954) (holding that New York law was preempted as to national banks, and stating that federal law is "declaratory of the *right of national banks to enter or remain in that type of business* [in that case, receiving saving deposits].") (emphasis added).

13

Not surprisingly, then, this Court has affirmed the grant of a declaratory judgment and an injunction in a §1983 suit brought by a national bank against a preempted state law. *See Ass'n of Banks in Ins., Inc. v. Duryee*, 270 F.3d 397, 400-402 (6th Cir. 2001). In *Duryee*, this Court held that: "normally Congress would not want States to forbid, or to impair significantly, ***the exercise of a power that Congress explicitly granted*** … .States retain the power to regulate national banks ***only where doing so does not prevent or significantly interfere with the national bank's exercise of its powers***." *Duryee,* 270 F.3d at 405 (emphasis added, internal citations omitted). In so holding, this Court affirmed a trial court ruling that expressly recognized a §1983 claim, and which stated that "the purpose of [12 U.S.C.] §92 [the statute at issue] ***was to especially benefit national banks, as opposed to merely protecting some general federal purposes.***" *Ass'n of Banks in Insurance v. Duryee,* C2-98-1120 (S.D. Ohio Feb. 9, 2000), unpublished Order at 11 (emphasis added) (attached in Addendum).

Cleveland attempts to avoid *Duryee* by maintaining that 1) the appellate panel in *Duryee* simply "assumed" the existence of "enforceable rights under §1983," and 2) the statute at issue (12 U.S.C. §92, granting national banks the right to sell insurance and be brokers in small towns) is technically part of the Federal Reserve Act, as opposed to the National Bank Act.[16] As to the first point:

---

[16] *See* Cleveland's Brief at 23, fn. 2.

an appellate panel's positive ruling on the merits of a claim necessarily signifies that the claim is legally cognizable, and this holding is surely not diminished as precedent when the panel sees no need to elaborate on the claim's validity. As to the second point: the statute at issue in *Duryee*, 12 U.S.C. §92, deals with the powers of national banks and is located in the U.S. Code under the heading: **<u>Regulation of the Banking Business: Powers and Duties of National Banks</u>**.[17] There is no reason in law or policy why this statute would be more likely to create rights under §1983 than similar National Bank Act provisions simply because it was initially enacted as part of the Federal Reserve Act rather than the National Bank Act; certainly, the *Duryee* Court did not see the distinction as important.

Thus *Duryee* is controlling here, and the authority cited by Cleveland is not persuasive. Cleveland relies principally on the Second Circuit case of *Wachovia Bank v. Burke,* 414 F.3d 305 (2d Cir. 2005). *See* Cleveland's Brief at 22-23. The *Wachovia* Court acknowledged what it called a "superficial parallel" between the language of the National Bank Act and that of statutes which do create rights under §1983, but held nonetheless that because "Congress created national banks as instruments to foster a national banking system," the statutory "focus on national banks does not imply the creation of a federal right." *Wachovia,* 414 F.3d at 323, 324. This reasoning is unpersuasive: Congress' creation of national banks

---

[17] Specifically, the heading of Subchapter IV of Chapter 2 of Title 12, in which the statute at issue in *Duryee* (12 U.S.C. §92) is located.

to further a federal purpose logically includes granting those banks the federal rights needed to carry out that purpose. The *Wachovia* Court, in characterizing national banks as entities whom "congressional preemption benefits … only as an incident of the federal scheme of regulation"[18] overlooked the fact that the very "object of the National Bank Act was to establish a national banking system free from intrusive state regulation."[19]

In fact, the U.S. Supreme Court has found enforceable rights under §1983 even when those rights are substantially more peripheral to the underlying statute than the Federal Reserve Act is to the National Bank Act. For example, in *Golden State Transit Corp. v. City of Los Angeles,* the Court held that the National Labor Relations Act vested, ***in employers***, the right to "resort to economic weapons should more peaceful measures not avail," even though this right was only inferred from, and not stated in, that Act. 493 U.S. 103, 110 (1989). The U.S. Supreme Court has likewise found, in a Medicaid provision governing state rate-setting procedures, an enforceable §1983 right for health-care providers to challenge state rates. *See Wilder v. Virginia Hospital Association,* 496 U.S. 498 (1990).[20]

---

[18] *Wachovia v. Burke,* 414 F.3d 305, 323 (2d Cir. 2005).

[19] *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 561 (9th Cir. 2002).

[20] On this issue, the only federal appellate case Cleveland cites (aside from *Wachovia*), is *First National Bank v. Marquette National Bank,* 636 F.2d 195 (8th

A national bank's right to carry out its business free from state interference is more explicit, *see* 12 U.S.C. §§24 (Seventh) and 484, and more central to the purpose of the relevant law than the §1983 rights recognized in *Golden State Transit* and *Wilder*. Recognizing the enforceability under §1983 of national banks' freedom from state interference furthers the main object of the National Bank Act, comports with U.S. Supreme Court case law finding §1983 rights in other statutes, and follows this Court's holding in *Duryee.*  Hence, this Court should reverse the District Court's decision that the Chase Entities do not have a claim under 42 U.S.C. §1983.

## II.    THE CHASE ENTITIES' PREEMPTION ACTION CANNOT BE DISMISSED ON THE ALTERNATE GROUNDS RAISED FOR THE FIRST TIME ON APPEAL

Although neither party raised the issue, the District Court dismissed the Chase Entities' request for an injunction for the alleged failure of the Chase Entities to show irreparable harm.  As the Chase Entities have shown, however,[21] the equitable requirement of irreparable injury "does not prevent federal courts from enjoining state officers who threaten and are about to commence proceedings … to enforce against parties affected an unconstitutional act, violating the Federal

---

Cir. 1980).  *See* Cleveland's Brief at 23.  However, the *Marquette* panel's assumption that the only rights protected by §1983 are "human, highly personalized rights" such as food and shelter, *see Marquette,* 636 F.2d at 198, cannot survive the U.S. Supreme Court's later decisions in *Golden Transit* and *Wilder*, both of which recognized economic rights as well.

[21] *See* First Chase Brief at 28-32.

Constitution." *Morales v. TWA,* 504 U.S. 374, 381 (1992). As the *Morales* Court stated:

> When enforcement actions are imminent – *and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its federal defenses –there is no adequate remedy at law.* We think … that injunctive relief was available here. … [R]espondents were faced with a Hobson's choice: continually violate the Texas law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review.

*Id.* (emphasis added).[22] This language describes, exactly, the current plight of the Chase Entities, and the Chase Entities are entitled to an injunction for the same reasons.

Cleveland does not defend the District Court's reasoning on this point, but attempts to justify the dismissal on grounds that were not relied on, or even presented to, the District Court. Specifically, Cleveland argues that dismissal was

---

[22] *See also Bank One, Utah, N.A. v. Guttau,* 190 F.3d 844, 850-851 (8th Cir. 1999) (holding that national bank would suffer irreparable harm from state's attempt to regulate bank's ATM's); *see also Med-Trans. Corp. v. Benton,* 581 F. Supp. 2d 721, 743 (E.D.N.C. 2008) (stating that "inability to enter … [a] market … without first complying with the preempted laws and regulations constitutes irreparable injury," and further holding that air ambulance carrier was entitled to injunction against state regulations, and was not required either to risk liability by violating the law, or to "violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review.")

proper under: 1) the discretion granted under the Declaratory Judgment Act, 2) abstention pursuant to *Younger v. Harris,* 401 U.S. 37 (1971), and 3) the Anti-Injunction Act (28 U.S.C. §2283).  None of these grounds were raised below, and none of them justifies dismissal.

**A.     The Preemption Action Is Not Subject To Discretionary Dismissal.**

Cleveland relies upon the discretion given to district courts to dismiss declaratory judgment actions,[23] but this discretion does not apply to requests for injunctive relief.  As stated by this Court:

> When a plaintiff seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court *must address,* then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources.  The claims in this case for which declaratory relief is requested and those for which injunctive relief is requested are so closely intertwined that judicial economy counsels against dismissing the claims for declaratory judgment relief.

*Adrian Energy Associates v. Michigan Pub. Ser. Comm'n,* 481 F.3d 414, 422 (6th Cir. 2007) (emphasis in original).  This case is similar.  Since the District Court *must* hear the Chase Entities' request for an injunction, it makes little sense to dismiss the declaratory judgment action.

---

[23] *See* Cleveland's Brief at 27.

Although Cleveland argues for the five-factor test for discretionary dismissal (or abstention) derived from *Wilton v. Seven Falls Company,* 515 U.S. 277 (1995),[24] and originally set forth in *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491 (1942), that test does not apply to suits seeking injunctive relief.   *See Cedar Rapids Cellular Tel., L.P., et al. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (holding that "*Brillhart* applies to declaratory judgment actions generally, but not to actions that, like this one, involve good faith claims for injunctive relief."); *see also Am. Guar. & Liab. Ins. Co. v. Anco Insulations, Inc.*, 408 F.3d 248, 250-251 (5th Cir. 2005) (stating that *Brillhart* controls only if the action is "purely declaratory" but that "[i]f the suit involves a request for monetary or other relief, the district court's discretion to stay is "narrowly circumscribed" by its obligation to hear cases within its jurisdiction"); *Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999) (holding that *Wilton* did not apply because the plaintiff did not seek "purely declaratory relief.")

Further, the *Wilton/Brillhart* doctrine does not embrace "cases [such as this] ***raising issues of federal law***."   *Wilton,* 515 U.S. at 290 (emphasis added). This Court has held that the doctrine does not apply when "the essence of …[the declaratory judgment plaintiff's] complaint" is based on federal preemption. *United States v. Kentucky,* 252 F.3d 816, 826 (6th Cir. 2001) (holding that when

---

[24] *See* Cleveland's Brief at 27.

federal preemption is "the essence" of a complaint, the reasoning of *Brillhart*, which expressly applies only to declaratory judgment actions "not governed by federal law," does not support abstention.)  Thus the District Court did not have discretion to dismiss the Chase Entities' request for an injunction.

Even assuming, *arguendo,* that the District Court had discretion to dismiss the Chase Entities' injunction under the five *Wilton/Brillhart* factors, those factors emphatically weigh against dismissal.  Taking each factor in turn:[25]

### 1)    Would the judgment settle the controversy?

Yes, as to Cleveland's public nuisance claim.  That claim has in fact been settled—the federal courts have uniformly rejected it—and if Cleveland obtains an opposite ruling in the State Action (which it is trying to do), the controversy will be reopened.

### 2)    Would the judgment serve a useful purpose in clarifying the legal relations at issue?

Certainly.  Cleveland's public nuisance claim purports to dictate what loans, in what areas, and in what circumstances, may be purchased and securitized by national banks.  A judgment clarifying whether a city may use the common law to regulate national banks in that manner would settle this legal question, not only for Cleveland and the Chase Entities, but for other cities and other banks as well.

---

[25] These five factors are listed in Cleveland's Brief at 38.

    3)    **Is the plaintiff using the declaratory remedy merely for the purpose of procedural fencing or in a race to judgment?**

The Chase Entities are not, but Cleveland is. Cleveland's original lawsuit (the "Federal Action")[26] was properly removed to federal court, but Cleveland tried to amend its complaint to add an Ohio Chase entity (JPMorgan Chase Bank, N.A.), admitting that the amendment's sole purpose was to destroy diversity.[27] The District Court rejected Cleveland's "blatant forum shopping," as well as Cleveland's "erroneous belief that it has an enduring right to litigate this case in state court, federal removal statutes notwithstanding."[28] Cleveland then tried the same thing a different way, suing a nondiverse set of Chase-related companies in state court.[29] Thus, Cleveland has used every possible method to

---

[26] The "Federal Action," as used herein, refers to Northern District of Ohio Case No. 1:08CV139 ("Federal Action").

[27] *See* Federal Action, dkt. #74 (Cleveland's Motion for Leave to File Amended Complaint. *See Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999) (holding that "it is well settled that federal courts may take judicial notice of proceedings in other courts of record.")

[28] *See* Federal Action, dkt. #172 (Aug. 8, 2008 Memorandum Opinion and Order) at 24. In the same opinion, Judge Lioi held that allowing the motion to amend "would be grossly inequitable, and unfairly would reward the City [of Cleveland] for its unabashed forum shopping efforts."

[29] *See* State Action Complaint (Addendum to Cleveland's Brief at ¶¶17, 29). In addition to the nuisance claim (which is the same claim brought in the Federal Action), the State Action also contains an allegation that the defendants have, by allegedly bringing foreclosure actions without standing, somehow violated Ohio RICO. The State Action also contains a $36,231 claim for reimbursement for demolished properties. *See id.* at ¶¶87-95.

avoid federal court, where its claim properly belongs, and where that claim has already been twice rejected.[30]

By contrast, the instant Preemption Action by the Chase Entities was brought **before Cleveland's State Action**, to guard against precisely such attempts by Cleveland to evade federal jurisdiction. *See* R.E. #1.[31]  The Chase Entities' purpose in the Preemption Action was—and still is—to preserve the integrity of the judgments that would be handed down in the Federal Action, and to avoid having to repeatedly litigate the same claim in different forums.

Thus, Cleveland's attack upon the Chase Entities for "procedural fencing" lacks all credibility.  Any "procedural fencing" in these suits has been conducted by Cleveland, to avoid the proper removal of its nuisance claim to federal court, and the subsequent federal dismissal of that claim.  The Chase Entities' Preemption Action will stop, rather than promote, this "procedural fencing," and the District Court's dismissal of that Preemption Action should accordingly be reversed.

---

[30] The Federal Action was dismissed by the District Court, and that dismissal has been affirmed by this Court.  *See Cleveland v. Ameriquest Mortgage Securities, Inc.,* 621 F. Supp. 2d 513 (N.D. Ohio 2009); *Cleveland v. Ameriquest Mortgage Securities, Inc.,* 615 F.3d 496 (6th Cir. 2010) (respectively).

[31] Originally, the Preemption Action was brought by Chase Bank USA, N.A, JPMorgan Chase Bank, N.A., and JPMorgan Mortgage Acquisition Corp.  It was later amended to add J.P. Morgan Securities, Inc. as a fourth plaintiff.  R.E. #29. Collectively, these parties are referred to herein as the "Chase Entities."

**4)     Would hearing the case increase friction between state and federal courts and infringe upon state jurisdiction?**

No, but friction between the federal and state systems will certainly happen if those systems hand down opposite results on a question as critical to federal-state relations as municipal regulation of national banks.  Such opposing results would tempt future litigants to "game" the dual court systems to obtain the most favorable result, leading to clashes between federal and state courts.[32]

**5)     Would an alternative remedy more effectively accomplish the desired result?**

There is no alternative remedy to a federal declaratory judgment and injunction preventing Cleveland's federally preempted nuisance claim from going forward in the State Action.

For the foregoing reasons, **hypothetically**, the District Court would have erred had it dismissed the Chase Entities' Preemption Suit under the *Wilton/Brillhart* factors, even had those factors been applicable, and even had they been brought to the District Court's attention.   Thus, Cleveland's alternate rationale for the District Court's dismissal of the Preemption Action fails, and that dismissal should be reversed.

---

[32] Opposing decisions from federal and state courts would be particularly awkward for the Chase Entities, as different entities in the Chase corporate family would be subject to conflicting rules of law.  This conflict, alone, would almost certainly lead to future litigation.

**B.**    **The Chase Entities' Preemption Action Does Not Qualify For Abstention Under _Younger v. Harris._**

Under _Younger v. Harris_, 401 U.S. 37 (1971), federal courts may abstain from hearing cases before them in favor of ongoing state judicial proceedings that implicate important state interests; Cleveland's State Action meets neither criterion.

The Chase Entities filed the Preemption Action on February 28, 2008, and Cleveland did not bring the State Action until August 22, 2008, six months later. This Court has held that "the proper time of reference for determining the applicability of _Younger_ abstention is the time that the federal complaint is filed." _Carras v. Williams,_ 807 F.2d 1286, 1290 n.7 (6th Cir. 1986). Here, the "federal complaint" is the Preemption Action complaint filed below on February 22, 2008, and there was no relevant, "ongoing" state proceeding on that date. For this reason alone, _Younger_ abstention does not apply.

Further, Cleveland's State Action does not relate to important state interests; in fact, the District Court held in the Federal Action that Cleveland's public nuisance claim is preempted by Ohio law.[33] Specifically, Ohio R.C. §1.63 precludes municipal regulation of the mortgage industry, and the Ohio Supreme

---

[33] _See Cleveland v. Ameriquest Mortgage Securities, Inc.,_ 621 F. Supp. 2d 513, 517-520 (N.D. Ohio 2009). State preemption of Cleveland's public nuisance claim was one of four grounds given by the District Court for dismissing the Federal Action. This Court, in affirming the dismissal, found it unnecessary to reach the issue.

Court recently rejected an attempt by Cleveland to enact such regulation through an ordinance. *See Am. Fin. Servs. Ass'n v. City of Cleveland*, 112 Ohio St. 3d 170 (2006). Thus the State Action, being an attempt to achieve the same result through litigation, violates state law (as the District Court has held), and cannot possibly promote important state interests.

Cleveland concedes that its State Action does not further a state interest, but contends that the federal courts—by deeming that Action the equivalent, for some purposes, of regulation—must assume that it does. *See* Cleveland's Brief at 36-37. However, nothing in the District Court's conclusion that Cleveland's nuisance claim is a *de facto* regulation implicates an "important state interest" for purposes of *Younger* abstention. As the U.S. Supreme Court has stated:

> In determining whether the "important state interest" requirement has been met, we consider whether the **state action concerns the central sovereign functions of state government** such that exercise of the federal judicial power would disregard the comity between the States and the National Governments.

*Pennzoil Co. v. Texaco, Inc.,* 418 U.S. 11 (1987) (internal citations omitted, emphasis added). A city's *de facto* regulation of the mortgage industry cannot be a "central sovereign function of state government," especially when the state, by statute, has expressly barred its cities from so regulating.

Finally, this Court has recently reversed a district court for abstaining from a similar public nuisance claim. In *CHRP v. Deutsche Bank Trust Co.,* 621

F.3d 554 (6th Cir. 2010), the trial court abstained from deciding a public nuisance claim brought against a bank in relation to properties in foreclosure, on the ground that the Ohio legislature's specific creation of the Cleveland Housing Court to address municipal housing problems showed an important state interest in having such issues decided in the Housing Court. *See id.* at 564. This Court reversed, holding that "the mere existence of Ohio's statutory scheme is not enough to warrant abstention; there must be a threat of disruption or impairment of the state's efforts to implement a coherent uniform policy." *Id.* at 568. Here, Cleveland has not begun to show a "coherent uniform policy" that will be disrupted by the Chase Entities' Preemption Action, and in fact the only coherent statewide policy at issue—that embodied in Ohio R.C. §1.63—bars Cleveland's nuisance claim.

For the reasons given, Cleveland's State Action does not implicate any important state interest, and it was not an ongoing proceeding when the Preemption Action was filed. The District Court, accordingly, cannot abstain, under *Younger*, from deciding whether the State Action is preempted by federal law.

## C.   <u>The Anti-Injunction Act Does Not Apply To The Chase Entities' Preemption Action.</u>

The Anti-Injunction Act, 28 U.S.C. §2283, would not bar the District Court from enjoining the State Action; certainly, neither Cleveland nor the District Court mentioned that Act below. The Act specifically <u>allows</u> injunctions when "expressly authorized by Act of Congress," and an injunction here is authorized by

at least three relevant statutes:  42 U.S.C. §1983, the National Bank Act, and the federal removal statutes.

The U.S. Supreme Court has directly held that §1983 is an "Act of Congress" that authorizes the enjoining of state actions.  *See Mitchum v. Foster,* 407 U.S. 225, 242-243 (1972).  The National Bank Act also qualifies, under *Mitchum*, as a statute that "expressly authorizes" the enjoining of the State Action. In deciding whether a statute authorizes injunctions for purposes of the Anti-Injunction Act, the *Mitchum* Court held as follows:

> In the first place, it is evident that, in order to qualify under the "expressly authorized" exception of the anti-injunction statute, a federal law ***need not contain an express reference to that statute.*** …Secondly, a federal law ***need not expressly authorize an injunction of a state court proceeding*** to qualify as an exception. Thirdly, it is clear that, in order to qualify as an "expressly authorized" exception to the anti-injunction statute, an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding.

*Mitchum,* 407 U.S. 225, 237 (emphasis added).  The Court clarified that it was not necessary that "an Act of Congress must, on its face and in every one of its provisions, be totally incompatible with the prohibition of the anti-injunction statute . . . .  The test, rather is whether an Act of Congress, clearly creating a

federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Id.* at 238.

Here the National Bank Act expressly confers, upon national banks, the right not to be "subject to any visitorial powers except as authorized by Federal law." 12 U.S.C. §484. The Act also gives national banks the right to "carry on the business of banking,"—including loan securitization[34]—and to engage in real estate lending. These rights mean nothing if state or local governments can sue national banks, in state court, on state law claims which the federal courts are powerless to enjoin. In the language of *Mitchum,* the rights conferred by the National Bank Act can only be given their "intended scope by the stay of . . . state court proceedings." *Mitchum* at 238.

Indeed, such was the recent conclusion of a federal district court that considered the National Bank Act in light of *Mitchum,* and held that "[t]he Anti-Injunction Act does not bar injunctions expressly authorized by Act of Congress . . . *. [and that a]n injunction enforcing the clear terms of the National Bank Act is such an injunction.*" *Bank of America v. McCann* (N.D. Fla. 2006), 444 F. Supp.

---

[34] Section 24 (Seventh) of the National Bank Act (12 U.S.C.) gives national banks the power to "carry on the business of banking; by discounting and negotiating promissory notes…and other evidences of debt; by receiving deposits … by loaning money on personal security …. [and by purchasing] for its own account investment securities under such limitations as the Comptroller of the Currency may be regulation prescribe." The NBA's Section 371 authorizes national banks to engage in the real estate lending business.

2d 1227, 1231 (emphasis added).  The *McCann* Court further held that the Act's exemption of national banks from state visitorial powers "has as a primary purpose limiting state interference."  *Id.*  The logic of *McCann* should govern here.

National banks, by statutory right, may carry on their business free from state interference, and that right has no meaning if the federal courts cannot enjoin such interference when it happens in state court.  Hence, the National Bank Act, for purposes of the Anti-Injunction Act, is also an "Act of Congress" that "expressly authorizes" an injunction.

Finally, the Chase Entities' requested injunction is likewise authorized by the federal removal statutes.  The U.S. Supreme Court has held that the federal removal statutes "expressly authorize" an injunction against state court proceedings for purposes of the Anti-Injunction Act, *see Mitchum,* 407 U.S. 225, 234 & n.12, and the Courts of Appeals have applied this rule "where a district court finds that a second suit filed in state court is an attempt to subvert the purposes of the removal statute."  *Frith v. Blazon-Flexible Flyer, Inc.,* 512 F.2d 899, 901 (5th Cir. 1975).

As a relevant example, in *Davis International, LLC v. New Start Group Corp.,* the plaintiffs, after their original suit was removed to federal court, "filed an amended complaint [in federal court] that deleted their state law claims," and then "re-filed their . . . [state law claims] in the [Delaware] Chancery Court,

30

adding two new state law claims." 488 F.3d 597, 600 (3d Cir. 2007). The Court of Appeals for the Third Circuit reversed the trial court's refusal—based on the Anti-Injunction Act—to enjoin the new state action, holding that "a plaintiff's fraudulent attempt to subvert the removal statute implicates the "expressly authorized" exception to the Anti-Injunction Act." *Davis*, 488 F.3d at 605. Like the plaintiff in *Davis*, Cleveland also responded to a removal of its state law claim by re-filing essentially the same claim in state court, and its State Action should likewise be enjoined.

Moreover, an injunction is especially appropriate when, as here, a litigant's purpose in subverting removal is to get a different result in state court than that decided in federal court. *See Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.,* 77 F.3d 1063, 1070 (8th Cir. 1996) (affirming an injunction against a State Action when "the [plaintiff's] purpose of filing the second action was to obtain a favorable decision in the Kansas courts on the . . . issue decided by this court, which KPERS [the plaintiff] believed to be erroneous."). Nor can a plaintiff avoid an injunction simply by naming a slightly different set of defendants in the state court suit to avoid diversity. *See SFM Holdings LTD. v. Fisher,* No. 08-81177, 2009 U.S. Dist. LEXIS 71953, *12 (S.D. Fla. 2009) (enjoining state court lawsuit with identical allegations to prior removed federal suit, but which did not name diverse defendant, and holding that "[t]his course of action [the state

court suit] evades and subverts this Court's jurisdiction and frustrates the entire purpose of the removal statute."); *see also Myers v. Hertz Penske Truck Leasing, Inc.*, 572 F. Supp. 500, 501, 503 (N.D. Ga. 1983) (enjoining state suit that was "virtually identical" to prior removed federal suit, except for the addition of two nondiverse defendants, in furtherance of "the policy . . . of protecting the removal jurisdiction of the federal courts from cynical legal gamesmanship.")

Such "cynical legal gamesmanship" is on full display here, and an injunction is thus warranted to stop it.  Cleveland's nuisance claim has been properly removed, and properly dismissed, by the federal courts.  Cleveland's attempt to subvert removal by bringing the same claim in the State Action, against a slightly different set of defendants (who are related entities to the defendants in the Federal Action) violates the law as set forth in the cited precedent.  In fact, Cleveland's conduct was even more egregious, since Cleveland did not bring the State Action until <u>after</u> an unsuccessful attempt to amend its complaint in the Federal Action, an amendment whose avowed purpose was to destroy diversity.[35] Hence, it could not be clearer that Cleveland's State Action was brought to subvert the removal of its Federal Action; thus, under the federal removal statutes, as well

---

[35] Cleveland tried (on Feb. 4, 2008) to amend its complaint to add an Ohio Chase entity (JPMorgan Chase Bank, N.A.), brazenly admitting that the amendment's sole purpose was to destroy diversity *See* Federal Action, dkt. #74 (Cleveland's Motion for Leave to File Amended Complaint.)  The District Court rejected this tactic.  *See* Federal Action, dkt. #172.

as under 42 U.S.C. §1983 and the National Bank Act (as shown above), the District Court would be "expressly authorized," for purposes of the Anti-Injunction Act, to enjoin the State Action.

### III. CLEVELAND'S CROSS-APPEAL SHOULD BE REJECTED BECAUSE THE DISTRICT COURT CORRECTLY FOUND JURISDICTION OVER THE CHASE ENTITIES' REQUEST FOR AN INJUNCTION

The District Court acknowledged that governing case law—specifically this Court's *Ammex* decision—called for holding that federal question jurisdiction existed over the Chase Entities' request for injunctive relief.[36] Cleveland maintains that *Shaw*, *Ammex* and their progeny involve state regulations, not state litigation.[37] The *Shaw* decision never mentions this distinction, but holds instead that "[i]t is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights" without limiting the types of "interference" that may be enjoined. *See Shaw v. Delta Airlines,* 463 U.S. 85, 96 n.14 (1983).

Practically, of course, enjoining a state regulation is equivalent to enjoining state officers from suing under it. In fact, in *Ammex* itself the plaintiff sought to enjoin Michigan's Attorney General from suing to enforce a Michigan

---

[36] *See* District Court Opinion at 14-15.
[37] *See* Cleveland's Brief at 38-39.

statute, and this Court found federal question jurisdiction. *See Ammex, Inc. v. Cox*, 351 F.3d 697, 703 (6th Cir. 2003)

Here, especially, regulation and litigation are intertwined. Cleveland only filed its public nuisance claim after enacting a mortgage regulation ordinance that the Ohio Supreme Court held was preempted by state statute. *See Am. Fin. Servs. Ass'n v. City of Cleveland*, 112 Ohio St. 3d 170 (2006). Moreover, in both this suit, and in the Federal Action, the District Court held that Cleveland's nuisance claim is a regulatory, rather than a proprietary, suit.[38] In reaching this conclusion the District Court, following precedent from the U.S. Supreme Court and elsewhere, stated that "[w]ithout question, common law actions for damages represent an important manner of regulating conduct."[39]

Cleveland concedes, as it must, that "[l]itigation may in some contexts constitute the equivalent of "regulation"", but insists that this should not be the case for "jurisdictional purposes." Cleveland's Brief at 39. Cleveland cites no

---

[38] *See* District Court Opinion at 13; *Cleveland v. Ameriquest Mortg. Sec., Inc.,* 621 F. Supp. 2d 513, 517-520 (N.D. Ohio 2009).

[39] *Ameriquest,* 621 F. Supp. 2d at 518, relying on *Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008), and numerous other cases cited at pages 518-519 of the *Ameriquest* opinion. In *Riegel,* the U.S. Supreme Court made clear that "excluding common-law duties from the scope of pre-emption would make little sense," since "a liability award can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324-25 (2008); *see also San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon,* 359 U.S. 236 (1959) (holding that "regulation can be as effectively exerted through an award of damages as through some form of preventive relief.").

34

authority for this distinction, nor can it do so, since the U.S. Supreme Court  has held that even when a "common-law remedy is limited to damages, a liability award can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Riegel v. Medtronic, Inc.,* 552 U.S. 312, 324 (2008).

It follows that federal courts have jurisdiction to hear preemption-based challenges to suits for money damages; otherwise, the potential defendants in those suits would be "faced with a Hobson's choice:  continually violate the … law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review." *Morales v. TWA, Inc.,* 504 U.S. 374, 381 (1992) (affirming injunction against potential state lawsuit, in part because of damage remedies available to the state.); *see also Phillip Morris Inc. v. Harsbarger,* 946 F. Supp. 1067, 1073 (D. Mass. 1996) (holding, in light of Supreme Court precedent including *Morales,* that "damage actions may function very well as state regulation," and finding federal jurisdiction over a request to enjoin a state attorney general's potential suit to recover Medicaid expenses).

This Court said in analogous circumstances:

> Accepting such an argument … would render meaningless the Supreme Court's repeated holdings that federal jurisdiction extends to suits to enjoin state enforcement on federal preemption and comparable grounds. ***Subject matter jurisdiction exists*** despite the fact that if one were to examine closely the nature of the

> complaint in such a case, the asserted preemption claim
> would often be remarkably similar to an anticipation of a
> federal defense.

*Ammex, Inc. v. Cox,* 351 F.3d 697 (6th Cir. 2003) (internal citations omitted, emphasis added).

In short, the District Court correctly found jurisdiction over the Chase Entities' request for an injunction, and this Court should reject Cleveland's cross-appeal of that finding.

## **CONCLUSION**

As shown in the First Chase Brief, and in this Brief, the District Court's dismissal of the Chase Entities' Preemption Action was an error both on its own terms, and on the alternate arguments Cleveland has offered. Therefore, the Chase Entities asks this Court (as it did in its First Brief) for the following relief:

1) to reverse the District Court's Judgment and Opinion;

2) to hold that:

    a) the Chase Entities' Amended Complaint states a cause of action under the Supremacy Clause which the District Court has jurisdiction to hear under 28 U.S.C. §1331;

    b) the Chase Entities' Amended Complaint states a cause of action under 42 U.S.C. §1983 which the District Court has jurisdiction

to hear under both 28 U.S.C. §1331 and 28 U.S.C. §1343(a)(3); and

c) the Chase Entities' Amended Complaint, under the U.S. Supreme Court's decision in *Morales v. TWA* and subsequent case law, adequately alleges irreparable harm.

3) to remand to the District Court for further proceedings governed by the holdings in the preceding paragraph.

Respectfully submitted,

/s/    Isaac Schulz
Isaac Schulz (0021009)
Michael N. Ungar (0016989)
Richik Sarkar (0069993)
Isaac J. Eddington (0072966)
ULMER & BERNE LLP
1660 West 2nd Street, Suite 1100
Cleveland, Ohio  44113-1448
216-583-7000 / Fax: 216-583-7001
ischulz@ulmer.com
mungar@ulmer.com
rsarkar@ulmer.com
ieddington@ulmer.com

*Counsel for Appellants Chase Bank USA, N.A, JPMorgan Chase Bank, N.A., JPMorgan Mortgage Acquisition Corp., and J.P. Morgan Securities Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,775 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003  in 14 pt. Times New Roman font.

<u>/s/ Isaac J. Eddington</u>
One of the Attorneys for Appellants

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on February 16, 2011 the Appellants/Cross-Appellees'
Response and Reply Brief was served on counsel for Defendant-Appellee, by
email through the CM/ECF system.


/s/     Isaac Schulz
*One of the Attorneys for Appellants Chase
Bank USA, N.A, JPMorgan Chase Bank,
N.A., JPMorgan Mortgage Acquisition
Corp., and J.P. Morgan Securities Inc.*

## **ADDENDUM**

## **UNPUBLISHED CITED AUTHORITY**

*Ass'n of Banks in Insurance v. Duryee,*
  C2-98-1120 (S.D. Ohio Feb. 9, 2000), unpublished Order at 11

(See Following Pages)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FILED**

FEB 09 2000

Kenneth J. Murphy, Cler
Columbus, Ohio

Association of Banks in
Insurance, Inc., et al.,

    Plaintiffs,

    v.

Harold T. Duryee, in his
official capacity as
Superintendent of the
Ohio Department of Insurance,

    Defendant.

    and

Independent Insurance Agents of
Ohio, Inc., et al.,

    Intervening Defendants.

Case No. C2-98-1120

## ORDER

The plaintiffs in this case sought a declaratory judgment and injunctive relief under 42 U.S.C. §1983 and 28 U.S.C. §2201. The plaintiffs claimed that certain Ohio statutes relating to the licensing of insurance agents conflicted with federal law and were therefore pre-empted by operation of the Supremacy Clause of the United States Constitution, Art. VI, cl. 2. The plaintiffs contended that Ohio Revised Code §§3953.21(B), 3905.02(B), 3905.02(E)(1) and (2), 3905.03(A)(5), 3905.04, 3905.18(C) and (D), and 3905.18(G)(1) and (2) were pre-empted by §13 of the Federal Reserve Act, 12 U.S.C. §92, which authorizes national banks to act as insurance agents in small towns with 5,000 or less inhabitants, and by 12 U.S.C. §26, which grants exclusive authority to the Comptroller of the Currency to determine whether a corporation or

association is lawfully entitled to do business as a national bank. In a decision rendered on June 18, 1999, this court found that those sections of the Ohio Revised Code were in fact pre-empted by federal law.

This matter is before the court on the plaintiffs' motion pursuant to 42 U.S.C. §1988 and Fed. R. Civ. P. 54(d) for an award of attorney's fees and costs. This motion is opposed by both defendant Duryee and the intervening defendants. The plaintiffs indicate in their reply memorandum, at page 5, that they are not currently seeking an award of attorney's fees against the intervening defendants, but may later do so if the plaintiffs prevail in the appeal of this case filed by the intervenors which is currently pending before the Sixth Circuit Court of Appeals. Therefore, the court finds that any request for attorney's fees against the intervenors is not yet ripe, and that branch of the motion is denied without prejudice.

The plaintiffs sought relief under 42 U.S.C. §1983, as well as declaratory relief under 28 U.S.C. §2201. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Standing alone, §1983 does not provide any substantive rights. Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 618 (1979). Rather, §1983 is simply a jurisdictional vehicle to pursue claims based upon the deprivation of substantive rights arising

2

under another federal statute or the Constitution. _Id_. However, the coverage of §1983 must be broadly construed.   _Dennis v. Higgins_, 498 U.S. 439, 445 (1991).

Plaintiffs who prevail on a claim under §1983 are entitled to seek attorney's fees under 42 U.S.C. §1988. That section provides in relevant part:

> In any action or proceeding to enforce a provision of section[] ... 1983 ... of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs....

Attorney's fees are available under §1988 regardless of whether the claim is based on a violation of a constitutional right or a right based on a federal statutory provision. _Maine v. Thiboutot_, 448 U.S. 1, 9 (1980).

Defendant Duryee argues that the plaintiffs are not entitled to attorney's fees under §1988 because the plaintiffs' claims were based upon the Supremacy Clause, which confers no rights subject to redress under §1983.

The Supreme Court has held that the mere allegation of incompatibility between federal and state statutes and regulations invoking the operation of the Supremacy Clause does not, in itself, give rise to a claim "secured by the Constitution." _Chapman_, 441 U.S. at 615. That clause is not a source of any federal rights, but rather it secures federal rights by according them priority whenever they come in conflict with state law.   _Id_. at 613. "'[P]reemption of state law under the Supremacy Clause--being grounded not on individual rights but instead on considerations of power--will not support an action under section 1983, and will not,

3

therefore, support a claim for attorneys' fees under section 1988.'" Associated General Contractors, San Diego Chapter, Inc., Apprenticeship & Training Trust v. Smith, 74 F.3d 926, 931 (9th Cir. 1996)(quoting Segundo v. City of Rancho Mirage, 813 F.2d 1387, 1394 (9th Cir. 1987)).

The Supreme Court noted in Golden State Transit Corp. v. City of Los Angeles, 493 U.S. 103, 108 (1989)(Golden State II) that "it would obviously be incorrect to assume that a federal right of action pursuant to §1983 exists every time a federal rule of law pre-empts state regulatory authority." On the other hand, "the fact that a federal statute has pre-empted certain state action does not preclude the possibility that the same federal statute may create a federal right for which §1983 provides a remedy." Id. at 108. In circumstances where "congressional pre-emption benefits particular parties only as an incident of the federal scheme of regulation, a private damages remedy under §1983 may not be available." Id. at 109. "[A] Supremacy Clause claim based on a statutory violation is enforceable under §1983 only when the statute creates 'rights, privileges, or immunities' in the particular plaintiff." Id., n. 4.

The Court in Golden State II, 493 U.S. at 108, set forth three factors for determining whether a federal statute confers a "right" within the meaning of §1983:

> In all cases, the availability of the §1983 remedy turns on whether the statute, by its terms or as interpreted, creates obligations "sufficiently specific and definite" to be within "the competence of the judiciary to enforce," Wright [v. City of Roanoke Redevelopment and Housing Authority, 479 U.S. 418, 432 (1987)), is intended

4

to benefit the putative plaintiff, and is not foreclosed 'by express provision or other specific evidence from the statute itself,' id., at 423.

As this test was later phrased in Blessing v. Freestone, 520 U.S. 329, 340 (1997), the plaintiff must show that Congress intended that the statute in question benefit the plaintiff, that the asserted right is not "so vague and amorphous that its enforcement would strain judicial competence" and that the statutory provision unambiguously imposes a binding obligation on the state and is "couched in mandatory rather than precatory terms."

In Golden State Transit Corp. v. City of Los Angeles, 475 U.S. 608 (1986)(Golden State I), the Supreme Court held that the city's policy of conditioning the renewal of the plaintiff's taxicab franchise on settlement of a pending labor dispute between the plaintiff and its union was pre-empted under the National Labor Relations Act ("NLRA"). The Court concluded in Golden State II that its prior holding--that the city's conduct was pre-empted under the NLRA--was within the competence of the judiciary to enforce, that the plaintiff was the intended beneficiary of the statute's scheme preventing governmental interference with the collective-bargaining process, and that the statute provided for no comprehensive enforcement scheme which would preclude a §1983 action. 493 U.S. at 108-109. Thus, the Court held that the plaintiff's pre-emption claim was one subject to redress under §1983. Id. at 113. In so holding, the Court noted that the fact that the duties of the city were not expressly set forth in the text of the statute did not preclude a finding that the statute

5

protected certain rights of labor and management against governmental interference. Id. at 111. The Court also distinguished the pre-emption in the case before it, stemming from state abridgment of a protected individual interest, from the NLRA pre-emption claim raised in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), which was grounded in the need to vindicate the primary jurisdiction of the National Labor Relations Board. Id. at 110.

Several cases since Golden State II have addressed the issues of whether a pre-emption claim also entails a right enforceable under §1983. In Livadas v. Bradshaw, 512 U.S. 107 (1994), the Supreme Court again addressed a pre-emption argument under the NLRA. In that case, the Court held that the state official's policy of refusing to enforce a state law requiring the immediate payment of any wages due upon termination of employment where the employee was governed by a collective-bargaining agreement containing an arbitration clause was pre-empted by the NLRA. Id. at 132. The Court further concluded that the defendant's violation of the plaintiff's rights under the NLRA to complete the collective-bargaining process and to agree to an arbitration clause were subject to redress under §1983.

In Howard v. City of Burlingame, 937 F.2d 1376 (9th Cir. 1991), the plaintiff was a ham radio operator who wanted to construct a radio tower which was higher than that allowed by the local zoning authorities. Although agreeing with the district court's determination that the local ordinances were partially pre-

6

empted by federal law, the court decided that none of the applicable federal statutes, regulations or rulings of the Federal Communications Commission gave ham operators such as the plaintiff the right to have the antenna of their choice, nor did they purport to create binding obligations on local governments to allow antennas of any particular height. Id. at 1379. The court further found that the federal laws were intended to benefit the general public and to promote the federal interest in amateur radio operations rather than the specific interests of any individual amateur radio operator. Id. at 1379-80. The court concluded that the plaintiff's pre-emption argument did not vest him with any enforceable rights under §1983. Id. at 1380. See also Baskin v. Bath Township Board of Zoning Appeals, 101 F.3d 702 (unpublished), 1996 WL 678228 (6th Cir. 1996).

Defendant Duryea relies on Gustafson v. City of Lake Angelus, 76 F.3d 778 (6th Cir. 1996), where the plaintiff alleged that local nuisance ordinances prohibiting the landing of his seaplane on a lake were pre-empted by Federal Aviation Administration regulations. However, while the court affirmed the refusal to award attorney's fees, noting, id. at 793, that a claim based on pre-emption is not cognizable under §1983, the court found that the local laws were not pre-empted, and did not engage in an analysis under Golden State II.

In Waste Management Holdings, Inc. v. Gilmore, 64 F.Supp.2d 537 (E.D.Va. 1999), the plaintiffs sought declaratory and injunctive relief to prevent the state of Virginia's enforcement of

7

various state laws aimed at curtailing flow of out-of-state municipal solid waste into the state. The plaintiff successfully asserted that certain federal seagoing vessel licensing provisions contained in 46 U.S.C. §§12103 and 12106 pre-empted the state laws. The court noted that the Supreme Court had previously held in Douglas v. Seacoast Products, Inc., 431 U.S. 265, 281 (1977) that a federal license confers upon the licensee the right to operate freely in each state's waters, subject only to legitimate exercises of the state's police power. Id. at 547. The court decided that the federal provisions were intended to benefit at least one of the plaintiffs, whose barges were federally licensed to engage in the coastwise trade. Id. The court further found that the right articulated by the Supreme Court in Douglas was not "vague" or "amorphous", and that the fact that the state's obligations not to interfere with the plaintiff's rights under the federal licensing statutes were not expressly set forth in those statutes did not preclude a finding that the state did in fact have such obligations. Id. at 547-548 (citing Golden State II, 493 U.S. at 111-112). The court concluded that the federal licensing provisions created rights in the plaintiffs under §1983.

In National Warranty Insurance Co. v. Greenfield, 24 F.Supp.2d 1096 (D.Or. 1998), the court addressed a pre-emption issue similar to that in the instant case. The plaintiff, a risk retention group ("RRG") in the business of selling product liability insurance to automobile dealers, argued that certain Oregon statutes which precluded RRGs chartered outside the state of Oregon from selling

8

such insurance in that state were pre-empted by the Product Liability Risk Retention Act of 1981 ("PLRRA"), 15 U.S.C. §§3901 et seq., as amended by the Liability Risk Retention Act of 1986 ("LRRA"). The court noted that the PLRRA pre-empted certain state laws with the goal of encouraging the formation of RRGs due to the lack of product liability insurance at affordable rates, thereby permitting RRGs to do business in every state after fully complying with the insurance laws of the jurisdiction in which they were chartered. *Greenfield*, 34 F.Supp.2d at 1098. The court further commented that in enacting the LRRA, Congress intended to preclude most state regulation of RRGs. *Id.*

Oregon law required that "authorized insurers" permitted to sell insurance in the state be a member in an insurance insolvency association. Since RRGs were prohibited under Oregon law from becoming a member of such an association, they were effectively prevented from achieving "authorized insurer" status. *Id.* at 1100. Oregon law further provided that an automobile dealer with a net worth of less than $100 million was required to purchase its reimbursement insurance policies from an "authorized insurer." The court concluded that the Oregon provisions were pre-empted because they prohibited foreign RRGs from operating in Oregon and discriminated against RRGs in violation of federal law. *Id.* at 1101.

The court further found that the LRRA created a right in the plaintiff enforceable under §1983. *Id.* at 1110. The court noted that the LRRA created a sufficiently specific and definite

9

obligation on the part of the state not to discriminate against or
regulate the operation of the RRGs in certain specific ways, and
that this obligation was within the competence of the judiciary to
enforce and was intended to benefit the RRG. Id. The court
further found the LRRA contained no comprehensive remedial scheme
indicating any intent by Congress to foreclose §1983 as a remedy.
Id. The court concluded that the plaintiff was entitled to an
award of attorney's fees under §1988.

The plaintiffs in the present case argued that Ohio Revised
Code §§3953.21(B), 3905.02(B), 3905.03(A)(5), 3905.04, and
3905.18(C) and (D) were pre-empted under §92. In Barnett Bank of
Marion County, N.A. v. Nelson, 517 U.S. 25 (1996), the Supreme
Court held that §92 pre-empted a Florida statute which prohibited
national banks from selling most types of insurance. The Court
pointed to the language of §92, which grants national banks the
authority to sell insurance in small towns in "addition to the
powers now vested by law" in national banks. (Emphasis supplied).
Barnett Bank, 517 U.S. at 32. The Court further stated that the
fact that §92 states that national banks "may" act as insurance
agents did not mean that Congress intended to "condition federal
permission upon that of the State." Id. at 35. See also Owensboro
National Bank v. Stephens, 44 F.3d 388, 391 (6th Cir.
1994)("Providing that a bank "may act" is no different than
providing that a bank "shall have the power to act." (Emphasis in
original)). The Court in Barnett Bank concluded "that [§92] means
to grant small town national banks authority to sell insurance,

13

whether or not a state grants its own state banks or national banks similar approval." Barnett Bank, 517 U.S. at 37.

In Owensboro National Bank, the court noted that the chief object of §92 was to increase the number of banks serving small towns by creating additional sources of revenue for such banks. 44 F.3d at 391. This supports the argument that §92 was intended to confer a right or benefit upon the national banks.

In New York Bankers Ass'n, Inc. v. Levin, 999 F.Supp. 716, 719 (W.D.N.Y. 1998), the court referred to the national banks' "exercise of their powers under federal law" and held that the New York statute "significantly interferes with the plaintiffs' federally conferred right to sell insurance products to its loan customers." (Emphasis supplied). In Deposit Guaranty National Bank v. Dale, 28 F.Supp.2d 395, 401 (S.D.Miss. 1998), the court enjoined enforcement of a Mississippi law "which interferes with a national bank's right to sell insurance as permitted by Title 12 U.S.C. §92." (Emphasis supplied).

This court concludes that the purpose of §92 was to specifically benefit national banks, as opposed to merely protecting some general federal interest, and that §92 grants to national banks a right or power to sell insurance. That section also imposes a binding and mandatory obligation on the states not to "forbid, or to impair significantly, the exercise of a power that Congress explicitly granted" under §92. Barnett Bank, 517 U.S. at 23. This court also finds that the obligations and rights created by §92 are sufficiently specific and definite to permit

11

competent judicial enforcement.  Finally, §92 does not contain a comprehensive enforcement scheme which would indicate an intent on the part of Congress to preclude a cause of action under §1983. Plaintiffs' pre-emption argument under §92 is based on substantive rights contained in that statute which are enforceable under §1983, and which may serve as the basis for attorney's fees under §1988.

The plaintiffs also argued that Ohio Revised Code §§3905.02(E)(1) and (2) and 3905.18(G)(1) and (2) were pre-empted by federal law.  In support of this argument, the plaintiffs referred to 12 U.S.C. §26, which grants exclusive authority to the Comptroller of the Currency to determine whether a corporation or association is lawfully entitled to commence the business of banking.  These Ohio provisions condition the selling of insurance within the state on compliance with the foreign corporation licensing requirements of Title XVII of the Ohio Revised Code and upon maintaining good standing with the Ohio secretary of state.

Ohio Revised Code §§3905.02(E)(1) and (2) and 3905.18(G)(1) and (2) concern the authority to determine whether a corporation will be a good corporate citizen which should be permitted to do business within the state.  This court held in its decision on the plaintiffs' motion for summary judgment, p. 28, that those provisions are pre-empted by 12 U.S.C. §26 because they conflict with the authority of the Comptroller to determine the qualifications of a corporation seeking to become a national bank. As noted in Bank of America, National Trust & Savings Ass'n v. Lima, 103 F.Supp. 916, 917-18 (D.Mass. 1952), the national bank's

12

"presence in the state is attributable to the national power, not to the state's permission."

However, the plaintiff national banks have no rights under §24 to determine their own fitness to do business, nor do they have the right to establish the rules and regulations by which they will be governed. Rather, the right or authority to decide whether an entity is fit and qualified to do business as a national bank rests with the Comptroller of the Currency under §26. Therefore, the plaintiffs cannot look to §26 as the source of any right enforceable under §1983.

Nonetheless, pre-emption of these Ohio provisions does not rest solely on §26. State law may also be pre-empted where the state law "prevent[s] or significantly interfere[s] with the national bank's exercise of its powers." Barnett Bank, 517 U.S. at 33. Under §92, duly chartered national banks have the right to sell insurance if they comply with the regulations of the Comptroller. However, §§3905.02(B)(1) and (2) and 3905.18(G)(1) and (2) also mandate that they satisfy the requirements of Title XVII and maintain good standing with the secretary of state as a foreign corporation.

Title XVII includes Ohio Revised Code §1703.15, which provides that a foreign corporation may not transact business in Ohio which could not be lawfully transacted by a domestic corporation. In the event that the secretary of state determines that a foreign corporation is transacting business in the state that a domestic corporation could not lawfully transact, the secretary is required

13

to cancel the license of the foreign corporation to transact business in the state. §1703.15.

Under Ohio Revised Code §3953.31(B), no bank, including a bank incorporated within Ohio, is permitted to act as an agent for a title insurance company. In addition, the principal purpose test in Ohio Revised Code §§3905.02(B), 3905.03(A)(5), 3905.04, and 3905.18(C) and (D) would effectively preclude many Ohio banks from selling other types of insurance. Since §92 gives national banks the right to transact business, i.e., sell insurance, which similarly situated domestic banks could not lawfully transact, §1703.15, and, by extension, §§3905.02(B)(1) and (2) and 3905.18(G)(1) and (2), operate to infringe upon a right afforded national banks under §92.

These obligations and rights created by §92 are sufficiently specific and definite to permit competent judicial enforcement, and §92 does not contain a comprehensive enforcement scheme which would indicate an intent on the part of Congress to preclude a cause of action under §1983 on this ground. Plaintiffs' pre-emption argument relating to §§3905.02(B)(1) and (2) and 3905.18(G)(1) and (2) is based on substantive rights contained in that statute which are enforceable under §1983, and which may serve as the basis for attorney's fees under §1988.

Defendant Duryee also contends that an award of fees under §1988 is inappropriate because this court did not specifically resolve the §1983 claims in its order of June 18, 1999, but rather based its ruling on federal pre-emption under the Supremacy Clause.

14

However, the fact that a party prevails on a ground other than
§1983 does not preclude an award of attorney's fees under §1988.
Haley v. Pataki, 106 F.3d 478, 481 (2d Cir. 1997). This is true
even if the plaintiff does not specifically mention §1983 in the
complaint. Americans United For Separation of Church and State v.
School Dist. of City of Grand Rapids, 835 F.2d 627, 631 (6th Cir.
1987). Rather,

> §1988 is concerned with the substance of a prevailing
> party's action, rather than the form in which it is
> presented. The mere failure to plead or argue reliance
> on §1983 is not fatal to a claim for attorney's fees if
> the pleadings and evidence do present a substantial ...
> claim for which §1983 provides a remedy, and this claim
> is related to the plaintiffs' ultimate success.

Id. Thus, in Americans United, the court concluded that the fact
that the plaintiffs chose to seek relief under the Declaratory
Judgment Act rather than §1983 did not preclude an award of
attorney's fees under §1988 where the plaintiffs asserted a claim
that their constitutional rights were infringed by the defendants.
See also Haley, 106 F.3d at 481-482 (attorney's fees available
under §1988 even though plaintiffs did not specifically refer to
§1983 where the plaintiff's Contract Clause claim presented a
substantial §1983 claim).

Here, the plaintiffs specifically asserted claims under §1983
in their complaint, in addition to requesting declaratory relief
under 28 U.S.C. §2201. The fact that this court granted
declaratory relief under §2201 without expressly discussing the
plaintiffs' claims in the context of §1983, or the fact that this
court could also grant the injunctive relief requested by the

15

plaintiffs under the general federal question jurisdiction provided in 28 U.S.C. §1331, see Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983), does not preclude the plaintiffs from now seeking an award of attorney's fees under §1988. See Maher v. Gagne, 448 U.S. 122, 129 (1980)("Nothing in the language of §1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.")

In order to prevail on a claim under §1983, the plaintiffs must prove two elements: first, that they have been deprived of a right secured by the Constitution or laws of the United States, and second, that the deprivation was conducted under the color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). The record in this case establishes that there is no dispute that state action was involved. The record further established that the state statutes in question, which defendant Duryea gave every indication that he would enforce, deprived the plaintiffs of rights guaranteed under §§2. While defendant Duryea argues that the plaintiffs have failed to establish that their rights were violated because they have yet to apply to become insurance agents, the record on summary judgment shows that such an application would have been futile because the plaintiffs were unable to certify that they could satisfy the principal purpose test under Ohio law. The record demonstrates that the plaintiffs asserted a substantial §1983 claim.

Defendant Duryea argues that the plaintiffs should not be

allowed to recover attorney's fees because they are financially able to pay for their counsel's services. However, the financial ability of a §1983 plaintiff to obtain legal representation is not a factor to be considered in determining whether to award fees. See Hastert v. Illinois State Bd. of Election Com'rs, 28 F.3d 1430, 1443 (7th Cir. 1993)("[T]he Supreme Court has consistently held that a plaintiff's ability to pay for legal representation is not a special circumstance justifying the denial of attorneys' fees.")(citing Venegas v. Mitchell, 495 U.S. 82 (1990) and Blanchard v. Bergeron, 489 U.S. 87 (1989)); Herrington v. County of Sonoma, 883 F.2d 739, 743 (9th Cir. 1989).

In conclusion, the court finds that the plaintiffs are entitled to an award of attorney's fees under §1988 against defendant Duryea in his official capacity, and their motion for attorney's fees and costs is granted. The motion for attorney's fees insofar as it applies to the intervenor defendants is denied without prejudice. The court notes that defendant Duryea has not indicated whether he contests the amount of attorney's fees claimed by the plaintiffs. If the defendant wishes to assert any objections to the amount or reasonableness of the fees claimed, such objections should be raised in a memorandum filed on or before February 23, 2000. The court will then issue an order establishing the amount of fees due to the plaintiffs.

17

It is so ordered.

James L. Graham
United States District Judge

Date: February 9, 2000

10